Argued February 17, affirmed March 14, 1916.

## WHEELER *v.* NEHALEM TIMBER CO.*

(155 Pac. 1188.)

**Master and Servant—Injuries to Servant—Actions—Question for Jury.**

1. The operation of a logging camp usually involves such risk or danger to the employees that a court cannot say, as a matter of law, that the cause of action for injuries from the falling of a stub did not come within the Employers' Liability Act (Laws 1911, p. 16), and it was for the jury, under proper instructions, to determine the matter.

> [As to what is "accident arising out of and in course of employment" within Employers' Liability Act, see note in Ann. Cas. 1914D, 1284.]

**Master and Servant—Injuries to Servant—Assumption of Risk—Contributory Negligence—Fellow-servants.**

2. The Employers' Liability Act eliminates the defenses of assumption of risk, contributory negligence, and carelessness of fellow-servants in a case within its provisions.

**Master and Servant — Injuries to Servant — Actions — Questions for Jury.**

3. In an action for injuries to a servant in a logging camp from the falling of a stub due to the kindling of a fire at its base for

---

*On the constitutionality, application and effect of the Federal Employers' Liability Act, see notes in 47 L. R. A. (N. S.) 38; L. R. A. 1915C, 47.

On Workmen's Compensation Acts generally, see note in L. R. A. 1916A, 23.        <span align="right">Reporter.</span>

warmth, evidence *held* to present a question for the jury whether the
kindling of the fire reasonably tended to promote the employer's busi-
ness.

**Appeal and Error—Assignments of Error—Necessity.**
   4.  Under Supreme Court Rule 12 (56 Or. 621, 117 Pac. ix), provid-
ing that no questions will be considered, except those going to the
jurisdiction of the court, or the sufficiency of a pleading, or arising
out of assignments of error, error in an instruction not presented by
assignment of error will not be examined.

From Multnomah: ROBERT G. MORROW, Judge.

Department 1.   Statement by MR. CHIEF JUSTICE
MOORE.

This is an action by Barton A. Wheeler against the
Nehalem Timber and Logging Company, a corpora-
tion, to recover damages for a personal injury.   The
defendant, the Nehalem Timber & Logging Company,
a corporation, in the fall of 1913, was operating in
Columbia County, Oregon, a logging camp where the
plaintiff, Barton A. Wheeler, and an assistant, who
are called "fallers," were employed by it to fell tim-
ber.   They performed this work by sawing a horizon-
tal line in a standing tree on the side toward which
it was expected to fall.   When the line reached the
proper depth, usually about one fourth of the diameter
of the tree, axes were used to cut a notch above the
line so as to terminate at its inner edge.   The fallers
then began sawing on the opposite side a kerf, into
which they usually drove steel wedges, causing the tree
to incline and preventing the saw from binding.   When
the tree began to topple they shouted "Timber!" stat-
ing the direction in which it was falling, immediately
withdrew the saw and fled to a place of safety which
had been previously selected.   As soon as a tree was
felled, two other employees, who are known as "buck-
ers," began sawing it into suitable lengths for logs.
Four such workmen constitute a group, eight of which

were employed at the defendant's camp under the supervision of Paul Nowak, as foreman, who each day directed the areas over which timber should be cut. Neither the fallers nor the buckers had any control over each other. The group of which the plaintiff was a member reached the standing-timber on the morning of November 23, 1913, while it was yet dark. Some snow was then on the ground, and the weather being cold and the wind blowing quite hard, a fire was started by which the men stood until it was sufficiently light to enable them safely to commence their labors. The plaintiff and his assistant having felled a tree, commenced sawing down another which stood near a rotten stub about 20 feet in height. In the meantime the buckers had cut into logs the first tree and were waiting for more work, when one of them inquired of the plaintiff if he would come and warm himself, should another fire be started. Receiving an affirmative answer he applied a lighted match to the rotten wood in the stub, causing a brisk fire. The plaintiff soon saw smoke in that direction, but his back being toward the stub as he and his assistant operated the saw, he did not know the fire had been started at that place. The wind having somewhat subsided, the second tree was felled near the stub, and the plaintiff, after returning from his place of retreat, went to the fallen tree to see how it lay, when someone suddenly cried, "Look out!" but before he had time to heed the warning the stub fell upon him, breaking his right hip, from the effects of which his leg is shortened. Paul Nowak, the defendant's foreman, having previously directed the plaintiff and others where they should work November 23, 1913, was not at the camp that day. He had theretofore seen employees setting in the woods fires

by which they warmed themselves, and had made no objection thereto.

The complaint states the facts hereinbefore detailed, and alleges in substance that when the plaintiff was engaged in felling the second tree, the defendant carelessly permitted its servants to set fire to the stub in consequence of which it burned, fell and injured him, and that in operating the logging camp the defendant was negligent in failing to promulgate rules for the government of the work.

The answer denies the material averments of the complaint, and for separate defenses alleges the plaintiff was guilty of contributory negligence; that he assumed the risk; that his injury was caused by the negligence of fellow-workmen; and that his hurt resulted from an inevitable accident, setting forth the particular facts in each defense.

The averments of new matter in the answer were denied in the reply, and at the trial of the cause the plaintiff introduced his testimony and rested, whereupon a motion for a judgment of nonsuit was interposed and denied. The defendant's counsel then declined to offer any evidence, and the cause, having been submitted, resulted in a verdict and judgment for the plaintiff in the sum of $3,000, and the defendant appeals.                                    AFFIRMED.

For appellant there was a brief over the name of *Messrs. Sheppard & Brock,* with an oral argument by *Mr. C. A. Sheppard.*

For respondent there was a brief over the name of *Messrs. Logan & Smith,* with an oral argument by *Mr. Isham N. Smith.*

Opinion by MR. CHIEF JUSTICE MOORE.

1, 2. The operation of a logging camp in Oregon usually involves such risk and danger to the employees engaged in the business that the court could not say, as a matter of law, that the cause of action stated in the complaint did not come within the provisions of the Employers' Liability Act, and, this being so, the jury were entitled, under proper instructions, to determine the matter. If they concluded the action came within such enactment, the separate defenses of assumption of risk, contributory negligence, and carelessness of fellow-servants, as set forth in the answer herein, would be eliminated: Laws Or. 1911, c. 3; *Blair* v. *Western Cedar Co.,* 75 Or. 276 (146 Pac. 480); *Yovo-vich* v. *Falls City Lumber Co.,* 76 Or. 585 (149 Pac. 941, 943).

3. It is maintained that an error was committed in denying the motion for a judgment of nonsuit. The proximate cause of the injury of which the plaintiff complains was the starting of a fire in the stub by a fellow-servant, and the question to be considered is whether or not the testimony tends to show that the blaze thus kindled was reasonably calculated to promote the business in which the defendant was engaged. It will be remembered that Mr. Nowak, the defendant's foreman, knew the employees had occasionally kindled fires on the ground where they were working in order that they might warm themselves, to which conduct he made no objection. Such method of obtaining artificial warmth was tacitly sanctioned by the defendant's agent who had charge of this branch of the work.

R. J. Moylan, the defendant's superintendent, in answer to the direction, "State to the jury why it is not customary to have fires down there in the woods when the men are at work," replied: "Well, I never con-

sidered it necessary for them to have a fire.   If they
were working they did not need it.   Men working keep
warm without a fire.''   The truth of this observation
will be generally admitted.   Occasions may arise, how-
ever, when from a lack of immediate necessity laborers
are compelled to cease operations until their efforts
are again required.   It will be kept in mind that when
the buckers had cut into logs the first tree which was
felled in their vicinity on the morning of the accident
there remained no more work for them to do until an-
other tree was ready for them to begin upon.   In this
situation and in consequence of the then prevailing in-
clement weather, they built a fire in the stub for their
own protection, as was their custom on former occa-
sions.   The plaintiff and his assistant had little need
of artificial heat, for they could undoubtedly keep warm
by constantly operating their saw in felling timber.
Not so with the buckers, however, for when they had
cut into logs the first tree, their work was temporarily
suspended.   By keeping warm until another tree had
been felled, the buckers were unquestionably better
fitted to perform the duties demanded of them, than
they would have been if their hands were numb with
the cold, thereby hindering them from successfully
operating their saws.

The defendant's foreman (Nowak) evidently recog-
nized the need of such artificial warmth, and from this
circumstance and tacit admission the jury might have
found that his principal's business was advanced by
kindling a fire in the woods when the employees were
temporarily idle and the weather was cold, so that
their hands might be in a proper condition to resume
labor when the occasion arose.

The testimony was sufficient to authorize a submis-
sion of the cause to the jury, and, this being so, no

error was committed in denying the motion for a judgment of nonsuit.

4. It is contended that an error was committed in instructing the jury that they might determine from the evidence received whether or not the business in which the defendant was engaged was of such a complicated nature and of such a dangerous character as to require the promulgation of rules for the protection of its employees, so that from a failure to publish such regulations, if found to be essential, an inference of negligence might be deduced. In order to substantiate the legal principle thus asserted, the brief of the defendant's counsel upon this branch of the case reads:

"The question whether the master was at fault in failing to adopt suitable rules is not for the jury, unless there is something in the testimony from which the inference may be drawn that it was practicable to have provided against the occurrence of the accident complained of by such rules."

Many decisions are cited in support of this doctrine. This question, however, is not properly presented for consideration. In the assignments of alleged error set forth in the appellant's printed abstract, ten objections to the action of the trial court are devoted to its refusal to charge the jury as requested, while not a single complaint is there made to the giving of any instruction. Our Rule 12 (56 Or. 621, 117 Pac. ix), prescribing the manner of reviewing a judgment on appeal, declares:

"On the hearing in this court, no questions will be examined or considered, except those going to the jurisdiction of the court, or when the pleading does not state facts sufficient to constitute a cause of action or defense, or those arising upon the assignments of error as contained in the printed abstract."

By reason of the failure to set forth such assignment in the printed abstract, the question now insisted upon will not be examined.

It follows from these considerations that the judgment should be affirmed, and it is so ordered.

AFFIRMED.

MR. JUSTICE BENSON, MR. JUSTICE BURNETT and MR. JUSTICE McBRIDE concur.