Argued March 22, affirmed April 11, 1916.

# NORDIN v. LOVEGREN LUMBER CO.*

(156 Pac. 587.)

**Trial—Instructions—Evidence.**

1. Evidence *held* insufficient to warrant a requested instruction on the contributory negligence of a logger injured by the rebound of a log negligently hauled against a tree, which struck him; there being no evidence that he knew of the danger or had been warned.

**Trial—Instructions—Evidence.**

2. Evidence *held* insufficient to warrant a requested instruction on a logger's assumption of the risk from moving logs, in the absence of warning or knowledge of the specific danger by which he was injured.

**Master and Servant—Injuries to Servant—Defenses—Assumption of Risk.**

3. The danger of hauling logs without swamping, which caused them to strike trees, forcing them to the ground is not so open and obvious, in the absence of knowledge on the part of the servant, that it may be said to have been assumed.

**Master and Servant—Injuries to Servant—Negligence—Questions for Jury.**

4. It is a question for the jury in a logger's action for injuries whether the master's failure to remove a tree which a log struck, rebounding and injuring him, was negligence, or whether failure to remove other obstacles which were the immediate cause of the injury was negligence.

**Master and Servant—Injuries to Servant—Duty to Warn—Questions for Jury.**

5. Under the evidence, *held* that it was a question for the jury whether there was negligent failure to warn an injured logger of the danger causing his injury.

**Master and Servant—Injuries to Servant—Actions—Evidence.**

6. Evidence that the master operated dangerous logging machinery, that he failed to provide the usual helpers, that his foreman ordered fast hauling after observing dangerous conditions, and that the foreman failed to warn the injured logger of the danger, though contradicted, is sufficient to carry the case to the jury.

**Master and Servant—Injuries to Servant—Actions—Instructions.**

7. In an action under the Employers' Liability Act (Laws 1911, p. 16, § 1), requiring employers at hazardous occupations to use every

---

*As to master's duty to instruct servant as to danger to which he is exposed, see note in 41 L. R. A. 143.

As to excessiveness of verdicts in actions for personal injuries other than death, see note in L. R. A. 1915F, 30.        REPORTER.

device, care and precaution practicable, it is not error as to the employer to instruct the jury that the employer was under the nondelegable duty to furnish the employee a reasonably safe place to work; that being more favorable to the employer than the law required.

**Master and Servant—Injuries to Servant—"Reasonably Safe Place to Work."**

8. A reasonably safe place to work requires the use of such precautions as accord with the general and ordinary course adopted by those in the same business.

**Master and Servant—Injuries to Servant—Liability—Care of Servant.**

9. In a logger's action for injuries, an instruction requiring finding in his favor if he acted with ordinary care and the injury was one which the defendant could have reasonably foreseen and prevented by the exercise of such care, *held* unobjectionable under the circumstances and the statutory duties imposed.

**Appeal and Error—Harmless Error—Instructions—Expectancy of Life.**

10. While the courts should take judicial notice of mortality tables, an employer cannot object to an instruction limiting the expectancy of his employee's life to 38 years when such tables show the expectancy in excess of that period.

**Trial—Instructions—Repetition.**

11. Error cannot be predicated on failure to give requested instructions already covered substantially in the general charge.

**Trial—Cautionary Instructions—Discretion of Court.**

12. The giving of cautionary instructions against the jurors' allowing their sympathies to influence their verdict is within the discretion of the court.

**Damages—Excessive Damages.**

13. Where the injury complained of transformed the defendant from a strong, healthy, self-supporting man into a speechless paralytic and helpless wreck, and he had been capable of earning $3 a day with a life expectancy of 38 years and had been forced to expend $1,200 for hospital and surgical bills, a verdict of $5,000 was not excessive.

[As to what is an excessive verdict in action for personal injuries, see note in Ann Cas. 1913A, 1361.]

From Washington: James U. Campbell, Judge.

Department 2.   Statement by Mr. Justice McBride.

This is an action by B. M. Nordin against the Lovegren Lumber Company, a corporation, to recover damages for personal injuries sustained by plaintiff while employed in the logging operations of the defendant. The complaint alleges that at the time of the injury defendant was engaged in hauling out logs from the

woods by means of a donkey-engine operating steel cables which were attached to the logs sought to be removed; that the engine was located about 140 feet from the logs which were being removed, and connected therewith by a steel cable running through a head block about 100 feet away from the logs; that the men engaged in the work were the plaintiff, a sniper, a rigging slinger, a choker setter, a knotter and the engine crew, all under the charge and direction of Olaf Hedin, foreman and hook-tender; that one regular man, a sniper and knotter, was absent the day of the accident. The complaint fully sets forth all the facts necessary to authorize a recovery under the Employers' Liability Act.

The answer denies all the material allegations of the complaint, except the fact of the injury, and pleads contributory negligence, assumption of risk, and negligence of a fellow-servant as affirmative defenses.

The reply puts in issue the affirmative defenses set forth in the answer. There was a jury trial, and a verdict and judgment for plaintiff in the sum of $5,000, from which the defendant appeals.    Affirmed.

For appellant there was a brief over the name of *Messrs. Senn, Elwall & Recken,* with an oral argument by *Mr. Frank S. Senn.*

For respondent there was a brief over the names of *Mr. Conrad P. Olson, Mr. Edmund B. Tongue* and *Mr. David E. Lofgren,* with oral arguments by *Mr. Olson* and *Mr. Tongue.*

Mr. Justice McBride delivered the opinion of the court.

1–3. It appears that it was plaintiff's duty to snipe the logs upon the under side; "sniping" being nosing

off or beveling the end of a log so that there would be less friction and resistance as it was being hauled. There were two snipers; the duty of one being to snipe the upper half of the log as it lay upon the ground where it had fallen, and of the other, the plaintiff in this instance, to wait until the log was drawn out a short distance and turned over by means of the cable, and thereafter to snipe the side which had been next to the ground as the log lay originally. Two cuts or sawlogs had been made from one tree. The larger of these, the butt cut, had been already sniped as it had fallen, and while it was being taken out plaintiff was engaged in sniping another log about 85 feet distant, and not in view of the log that was being taken out. There was no swamper employed by the defendant; a swamper being a man whose duty it is to cut away brush and logs which have a tendency to obstruct the progress of a log which is being hauled out, thereby rendering the operation of hauling easier as well as safer. On the contrary, the logs were dragged out without regard to obstructions from logs or small trees in the vicinity. When the first log was hauled out, the front end of it near where the cable was attached necessarily struck against a small fir tree, and as a result of this impact the rear end slued around with such force that it was thrown against a clump of vine maple trees from 20 to 30 feet in height, bending them suddenly to the ground. The trees, being of a tough, springy nature, sprang back to their original position as soon as the log was removed, and there appears to have been nothing left to indicate to a person who had not witnessed the circumstance that there was any danger likely to result from standing in their vicinity. With the exception of plaintiff, every member of the crew, including Hedin, in fact saw the collision of the

first log with the small fir tree and its rebound against the vine maple, and were thereby warned of the unsafety of standing near the maples when a log was being hauled out. When plaintiff had finished his work on the log he had been sniping, and after the first log above mentioned had been hauled out, he came up to the vicinity of the second log in order to be ready to snipe it upon the under side as soon as it should be drawn from its bed and turned over for that purpose, and, in ignorance of the fact that the first log had collided with the fir tree and rebounded against the maples in such a way as to make them a menace to anyone standing near them, he stood in such a position that they were between him and the log that was to be hauled out. Nobody warned him, and it is not shown that anybody noticed him before the accident. There is evidence tending to show that the acting foreman was walking up the track made by the previous log, and was in such a position that he could have seen him, but he states that he did not, and did not know that plaintiff was in the vicinity. The second log was made fast to the cable and the engine started at full speed. When the log came in contact with the small fir tree which had caused the farther end of the first log to slue around and strike the vine maples, the result was the same as before, and one of the trees was bent or whipped down with such force that it struck plaintiff upon the head, inflicting injuries from the effect of which he was rendered incapable of speech, is paralyzed on one side, and will be practically helpless for life. In all this testimony we find nothing to justify any instruction as to contributory negligence or assumption of risk. The nature of plaintiff's duties required him to be where he was or in that immediate vicinity ready to snipe the log without delay the min-

ute it was drawn out and turned over.  He was igno-
rant of the fact that the impact of the first log with the
fir tree had caused it to strike against the maples,
while the foreman knew that fact and knew that plain-
tiff was employed at that time at another place.  The
risk was not so open and obvious that he can be said
to have assumed it.  It was a risk which, while known
to the foreman in immediate charge of the work, was
unknown to plaintiff, and a risk which the employment
of a swamper, or in the absence of a regular swamper
one of the other hands under the direction of the fore-
man, could have obviated.  It requires no argument
to demonstrate the fact that the work of getting out
sawlogs by means of an engine and cables is a work
involving risk and danger of injury to the employees,
and the manner in which the work was conducted in
defendant's logging camp without any previous
swamping . or removal of obstructions rendered it
doubly dangerous.

4. It was for the jury to say whether the failure of
the defendant to remove the fir tree which was the
original obstruction which caused the log to swing
around, or the failure to remove the maples which were
the immediate agents producing the injury, were
either or both the neglect of such precautions as would
have been proper under the circumstances.

5. The question as to whether there was a negligent
failure to warn plaintiff was also a proper matter for
their consideration, and there was no ground for a
nonsuit.  The case is similar in many respects to *Blair
v. Western Cedar Co.,* 75 Or. 276 (146 Pac. 480), and,
as the opinion in that case answers many of the con-
tentions urged here, they need not be further consid-
ered.  In addition to that case the following cases may
be cited as indicating that injuries occurring under

circumstances similar to the case at bar properly come within the purview of the Employers' Liability Act: *Wolsiffer* v. *Bechill*, 76 Or. 516, 146 Pac. 516; *Bridal Veil Lumber Co.* v. *Pacific Coast Casualty Co.*, 75 Or. 57 (145 Pac. 671); *Lang* v. *Camden Iron Works*, 77 Or. 137 (146 Pac. 968); *Yovovich* v. *Falls City Lbr. Co.*, 76 Or. 585 (149 Pac. 941); *Wheeler* v. *Nehalem Timber Co.*, 79 Or. 506 (155 Pac. 1188). To sum up the evidence upon this branch of the case it may be said that there was no evidence of contributory negligence on the part of the plaintiff and no evidence of any assumption of risk.

6. On the other hand, there was evidence: (1) That defendant was engaged in the operation of dangerous machinery, namely, an engine for hauling logs with cables and chains attached and operated by steam; (2) that defendant was negligent in not providing a swamper to perform this duty or in not calling workmen from other duties to perform the work of a swamper; (4) that the person immediately in charge of the work and who had the supervision of it was negligent in the operation of the machinery, in that he gave the signal for fast speed in drawing out the log after observing the effects of such speed upon the preceding log; (5) that the person supervising the work was negligent in not warning plaintiff of the danger of standing in the vicinity of the log while it was being drawn out after such foreman had observed the tendency of a log drawn along this route to swing around violently, as demonstrated in the case of the log which had just preceded it. We do not say that the evidence for plaintiff is conclusive or overwhelming upon all, or, indeed, any, of these propositions, but there was some competent testimony upon each of them, and its weight and sufficiency were exclusively

for the jury.   Several objections are urged as to the
rulings of the court upon the admission of testimony,
but we find the case remarkably free from error in
these respects and deem a discussion of each assign-
ment unnecessary.

7, 8. We will now consider the exceptions to certain
instructions given by the court.   The first of these is
as follows:

"I charge you that as a matter of law the defendant
is under a duty, which it cannot delegate to others, to
furnish this plaintiff with a reasonably safe place to
work, and that the failure on the part of the defendant
to furnish a reasonably safe place to work is negli-
gence, and renders the defendant liable in damages for
the injury of this plaintiff caused by reason of such
negligence."

This is an action based purely upon the Employers'
Liability Act, which provides, among other require-
ments:

"All owners, contractors, or subcontractors and
other persons having charge of, or responsible for, any
work involving a risk or danger to the employees or
the public, shall use every device, care, and precaution
which it is practicable to use for the protection and
safety of life and limb, limited only by the necessity
for preserving the efficiency of the structure, machine,
or other apparatus, or device, and without regard to
the additional cost of suitable material or safety appli-
ance and devices": Laws 1911, p. 16, § 1.

In view of this provision the instruction was quite
as favorable to defendant as the law warranted.   In-
stead of holding the employer to the exercise of "every
device, care, and precaution," the instruction required
it only to have furnished the defendant with a "rea-
sonably safe" place in which to work, which means
the use of such precautions as accords with the general
and ordinary course adopted by those in the same

business: Words and Phrases, p. 5985, citing *Reed* v. *Missouri, K. & T. R. Co.*, 94 Mo. App. 371 (68 S. W. 364); *Cunningham* v. *Journal Co.*, 95 Mo. App. 47 (68 S. W. 592); *Geno* v. *Fall Mountain Paper Co.*, 68 Vt. 568 (35 Atl. 475).

9. The next instruction objected to is as follows:

"If you find in this case that the plaintiff, B. M. Nordin, acted with ordinary care, and that the accident was one which the defendant could have reasonably foreseen and prevented by the exercise of ordinary care, then your verdict must be for the plaintiff."

Considering the circumstances of this case and the statutory duties imposed upon employers, this instruction seems unobjectionable.

Objection is made to two other instructions which eliminated the common-law defenses of assumption of risk and the negligence of fellow-servants, but for reasons already given we think that no error was committed in that respect.

10. Another objection is made to an instruction by the court as to plaintiff's expectancy of life, which the court placed at 38 years. This was in accordance with the evidence, which showed that plaintiff was at the time of the accident of the age of 26 years and in robust health in every respect. The better rule seems to be that the courts will take judicial notice of the mortality tables, which in this instance indicate that plaintiff's expectancy of life at the time of the accident was 38.11 years: Bouvier's Dict., tit. "Life Tables"; 16 Cyc. 871; 8 Ency. Ev. 639.

11. The defendant presented a long series of requests for instructions embodying the common-law rules in regard to assumed risk, contributory negligence, and negligence of a fellow-servant, all of which the court refused to give, assigning as a reason that

he had not time to consider them. Most of them were inapplicable to this case, for reasons already given, and those which were applicable were sufficiently covered by the general charge. Owing to the length and number of these requests, it is impracticable to take them up and discuss them *seriatim* in this opinion.

12. The last objection is to the refusal of the court to caution the jury against allowing their sympathies to have any influence upon their verdict. It has been frequently held that the giving or refusing of cautionary instructions of this character is within the discretion of the court: *Scheurmann* v. *Mathison,* 67 Or. 419 (136 Pac. 330).

13. In the instant case it appears that as a result of the injury the defendant has been transformed from a strong, healthy, self-supporting man into a speechless paralytic and helpless wreck. Taking into consideration his earning power, which was shown to be $3 a day, his expectancy of life, which was 38 years, his expenses for surgical and hospital aid, which amounted to more than $1,200, the verdict of $5,000 seems to us to have been very small; indeed, too small to indicate that sympathy influenced the deliberations of the jury. It is evident that when his attorney's fees are taken from this he will have a very small capital upon which to subsist—far less than the income he would have been entitled to recover under our beneficent Workman's Compensation Act. If his injury and the smallness of the compensation awarded do not "adorn a tale," they at least "point a moral" which is obvious.

The judgment is affirmed.   Affirmed.

Mr. Chief Justice Moore, Mr. Justice Bean and Mr. Justice Harris concur.