Argued July 23, reversed September 8, rehearing denied November 10, 1914.

## ISAACSON v. BEAVER LOGGING CO.*

(143 Pac. 938.)

**Master and Servant—Injuries to Servant—Action—Nonsuit.**

1. Where there was evidence that a servant was experienced as a loader of logs upon a train and was employed in that work, but that he was injured while removing an iron spool from a truck at the direction of the head loader, who failed to warn him of the dangers incurred in the manner in which he proceeded to do that work, in which he was inexperienced, a nonsuit was properly denied.

**Master and Servant—Injuries to Servant—Statutory Provisions.**

2. The Employers' Liability Act (Laws 1911, p. 16), providing, after a statement of specific instances in which it applies, that all owners and persons having charge of any work involving the result or danger to the employees shall use every precaution practicable for the protection of life and limb, does not apply to the employment of a servant in removing an iron spool, weighing 250 to 300 pounds, from a truck upon a railroad track.

**Master and Servant—Injuries to Servant—Action—Question for Court or Juries.**

3. Where there is no dispute as to the facts, or where only one inference can legitimately be drawn, the court may determine whether an offending employee is a temporary vice-principal or a fellow-servant.

**Appeal and Error—Decisions Reviewable—Questions of Fact.**

4. The determination of the trial court that an offending employee is a vice-principal or fellow-servant is necessarily subject to review.

**Trial—Instructions—Assumption of Facts.**

5. In an action for injuries to a servant in unloading a heavy spool from a truck, where plaintiff's evidence that he performed the work under the direct, positive command of a superior servant was contra-

---

*As to the constitutionality, application and effect of the Federal Employers' Liability Act, see note in 47 L. R. A. (N. S.) 38.

REPORTER.

dicted by the testimony of defendant, an instruction that the servant giving the order was not a fellow-servant with the plaintiff was error.

> [As to employees entitled to protection under the Federal Employers' Liability Act, see note in Ann. Cas. 1914C, 164.  As to validity of exemption of certain employments from operation of Employers' Liability Act, see note in Ann. Cas. 1914D, 404.  As to what is "accident arising out of and in course of employment" within Employers' Liability Act, see note in Ann. Cas. 1914D, 1284.  As to damages recoverable under Federal Employers' Liability Act, see note in Ann. Cas. 1914C, 175.]

From Multnomah: Thomas J. Cleeton, Judge.

This is an action by John Isaacson, a minor, by Oscar Matson, his guardian *ad litem,* against the Beaver Logging Company, a corporation, to recover damages for a personal injury alleged to have been caused by the defendant's negligence. From a judgment for the plaintiff in the sum of $1,200, the defendant appeals.  The facts are stated in the opinion of the court.       Reversed.   Rehearing Denied.

For appellant there was a brief  over the name of *Messrs. Senn, Ekwall & Recken,* with an oral argument by *Mr. Frank S. Senn.*

For respondent there was a brief and an oral argument by *Mr. Arthur I. Moulton.*

Department 1.  Mr. Justice Moore delivered the opinion of the court.

1. It is contended that in denying a motion for a nonsuit when the plaintiff's testimony in chief had been received, an error was committed.  It appears from a transcript of the testimony that at the time the plaintiff was hurt he was nearly 20 years old.  He had worked at logging nearly 3 years, having been employed by the defendant about four months at its logging camp in Columbia County, Oregon, as second loader.  His duties as such required him to assist

the head loader, whose orders he was obliged to obey in placing on railway trucks logs for transportation. Logs were dragged by donkey-engines to the top of an incline, down which they were rolled to a retarding timber in front, called a brow skid. This checking log was placed parallel with the defendant's line of railroad a little lower than swivel bunks on the platforms of short railway trucks, and about three feet from their sides. In order to load logs there were driven into each end thereof hooks to which were attached the ends of a crotched rope, the trunk of which, passing over a pulley at the top of a gin-pole, extended to the drum of a donkey-engine stationed at the top of the incline. An application of power to the machinery lifted above the brow skid the log, which, being swung over the railway, was lowered to two trucks set at a sufficient distance from each other to accommodate the length of the load, the logs being securely chained to the bunks on the trucks. When thus arranged the front truck would be attached to the locomotive or to the truck immediately in front, thereby making up a train. In returning unloaded trucks they would be coupled together, forming separate four-wheeled flat cars about eight feet in length.

The defendant, on December 12, 1912, hauled, on one of such unloaded trucks, to the incline an iron spool, called a gypsy, having through the center a hole into which the spindle of a donkey-engine was to be inserted. The defendant's superintendent directed that the spool should be unloaded and taken to the place where it was to be used at the top of the incline. An iron bar was inserted in the hole in the gypsy, and, the brakemen assisting in raising the spool, one end of the bar was placed on the plaintiff's shoulder while the other end rested on the shoulder of the head

loader. The part of the train on which the gypsy was carried could not be switched to the proper place beside the margin of the incline, and the spool had to be carried over the platforms of two trucks before it could be removed from the train. When the plaintiff, who walked in front, reached the right place to ascend the incline, he attempted to step from the edge of the truck to the brow skid, but, his assistant not keeping pace with him at that instant and giving the bar a swing, Isaacson lost his balance and fell, the spool slipping forward on the bar and breaking his collar-bone in several places, necessitating the removal of fragments thereof.

The plaintiff testified in effect that when ordered by the defendant's superintendent to unload the spool, the witness suggested that it should be rolled off the truck, but the head loader notified him that the gypsy should be carried to the donkey-engine at the top of the incline; that he estimated the weight of the spool to be 250 or 300 pounds, but did not know the weight thereof or the danger to be incurred in attempting to obey the order of the head loader; that when he reached the proper place to leave the truck he notified his assistant that he was then to step to the brow skid; that the defendant's superintendent, who was present and saw the witness attempt to comply with the direction given, did not warn him of the danger to be incurred, or direct a different method of removing the spool.

The plaintiff was probably a competent loader and knew how properly to discharge the duties devolving upon him with respect to placing the logs on trucks for transportation. He had never had any experience, however, in unloading gypsies from cars, and having been informed that the spool was to be carried

up the incline and half of the weight placed on his shoulder, he proceeded as best he could to obey the orders, which he asserts had been given, by taking the only course available. His superiors who knew these facts should have warned him of the dangers which he might have incurred in attempting to step a distance of about three feet, burdened as he was, and directed some other method of unloading the gypsy, but, not having done so, evidences such a degree of negligence, when viewed in the light of the plaintiff's youth and inexperience, as to have warranted a submission of the cause to the jury. No error was committed in refusing to grant the motion for a judgment of nonsuit.

2. An exception having been taken to a part of the charge, it is contended that the court erred in instructing the jury that the head loader was not a fellow-servant with the plaintiff when he was hurt. It is maintained by plaintiff's counsel, however, that this action was based upon and should have been tried as a violation of the Employers' Liability Act, Section 5 of which renders unavailing as a defense the negligence of a fellow-servant. Considering in inverse order the legal principles thus invoked, a clause of Section 1 of the enactment reads:

"And generally, all owners, contractors or subcontractors and other persons having charge of, or responsible for any work involving a risk or danger to the employees or the public, shall use every device, care and precaution which it is practicable to use for the protection and safety of life and limb, limited only by the necessity for preserving the efficiency of the structure, machine or other apparatus or device, and without regard to the additional cost of suitable material or safety appliance and devices": Gen. Laws Or. 1911, p. 16.

It is argued by plaintiff's counsel that the cause of action set forth in the complaint comes within the provision quoted, and, this being so, the defendant was not prejudiced by the giving of the instruction of which it complains. In *Schulte* v. *Pacific Paper Co.,* 67 Or. 334, 337 (135 Pac. 527, 528), Mr. Justice Eakin, referring to the enactment relied upon, says:

"This statute does not cover every case of an employers' liability to his employee, but only the specific cases enumerated in the act."

In *Schaedler* v. *Columbia Contract Co.,* 67 Or. 412, 418 (135 Pac. 536, 538), in adverting to the same statute, it is said:

"A careful examination of Section 1 of the act will convince any disinterested person, who is learned in the law, that there are many causes that might produce a personal injury to an employee that are not specified in that provision of the statute. In order to recover damages not thus enumerated, resort must be had to the principles of the common law."

It is believed that the quoted part of the act in question amounts to nothing more than a reiteration of the preceding provisions of the section, and that the unloading by mere manual labor of the gypsy in the manner and under the circumstances indicated does not come within the provisions of the Employers' Liability Act. A contrary conclusion would be equivalent to holding that the enactment repealed the rules of 'the common law with respect to the recovery of damages for a personal injury.

3, 4. Where there is no dispute as to the facts, or where only one inference can legitimately be drawn from them, the court may lawfully determine whether or not an offending employee is a temporary vice-prin-

cipal or a fellow-servant: 4 Labatt, Mast. & Serv., (2 ed.), § 1437. Such conclusion, however, is necessarily subject to review on appeal.

5. According to the plaintiff's theory he was, when hurt, complying with, and sustained an injury in obeying, a direct, specific, personal order of the head loader to carry the gypsy up the incline. The instruction challenged was evidently predicated upon the presumption that the defendant was not engaged in carrying freight to the incline, but in hauling logs therefrom, and the plaintiff was employed to assist in placing such logs upon trucks for transportation, that while it will be presumed that he was competent to discharge such duty, and that he accepted the responsibility for any injury that might result from ordinary risks of his service, in the performance of which negligence could not be based on an order of the head loader, subjecting him to the customary hazards of his engagement, the unloading of the gypsy was not the performance of a service similar to that for which the plaintiff was engaged, whereby he assisted in raising by machinery heavy weights from the incline, lowering them to and placing them upon trucks; that an obedience to the order to remove the spool from the train and take it to the top of the incline required him to perform work outside the scope of his original acceptance; that the order to remove the gypsy was given by the defendant's superintendent, who was a superior employee and authorized to represent the master by virtue of his agency to act for his principal; that the manner of executing the order was directed by the head loader, who had exclusive authority over and control of the plaintiff; that Isaacson was a minor and inexperienced in unloading gypsies, a work the performance of which was outside his employment; that his lack of maturity and want of knowledge with respect to the

extra service required of him might reasonably be supposed to have been known to the employer, and, this being so, the order to do the work was justly regarded as a violation of the duty which the master owed the servant,though he, without objection or protest, undertook to perform the service (*Cole* v. *Chicago & N. W. R. Co.,* 71 Wis. 114 (37 N. W. 84, 5 Am. St. Rep. 201); that under these circumstances it must have been believed that the act of ordering the plaintiff to perform a new and different kind of work was the act of the master; and that the superintendent who gave the order and the head loader who directed the manner of its execution were, for that time at least, vice-principals for whose negligence the defendant is liable: 4 Labatt, Mast. & Serv. (2 ed.), § 1388.

The supposed theory upon which the instruction objected to was evidently based is a correct exposition of the law applicable to the plaintiff's testimony which, if uncontradicted, would not have rendered the judgment invulnerable. The testimony of the head loader, Charles Josephson, is to the effect that he did not order, direct or instruct the plaintiff to assist in carrying the gypsy, but that Isaacson assumed the initiative in that manner of unloading the spool. As the testimony referred to is contradictory, the court should have instructed the jury that if they found the plaintiff was ordered to carry the gypsy by the head loader, they should determine that he was not a fellow-servant with the plaintiff at the time of the accident.

An error was committed in charging the jury, and, such being the case, the judgment is reversed and a new trial ordered.

Reversed.   Rehearing Denied.

Mr. Justice Eakin, Mr. Justice Burnett and Mr. Justice Ramsey concur.