Argued February 4, affirmed February 23, rehearing denied March 16, 1915.

# BLAIR *v.* WESTERN CEDAR CO.*

(146 Pac. 480.)

**Master and Servant—Employers' Liability Act—Construction.**

1. The Employers' Liability Act (Laws 1911, p. 16; L. O. L., p. xxxvi), being in its civil aspect a remedial statute, is to be construed liberally.

> [As to Federal Employers' Liability Act as superseding common law and statutory law on same subject, see note in Ann. Cas. 1915B, 493.]

**Master and Servant—Employers' Liability Act—Scope of Act.**

2. That negligence may be asserted under the Employer's Liability Act (Laws 1911, p. 16; L. O. L., p. xxxvi) by its title for protection of employees in "any dangerous occupation," it is not necessary that it be referable to the specific duties enjoined on the employer in certain constructive operations by the first part of Section 1; but other duties, and in other operations, are imposed on him by the concluding clause: "And generally," in "any work involving a risk or danger to the employees," he "shall use every device, care and precaution which it is practicable to use for the protection and safety of life and limb, limited only by the necessity for preserving the efficiency of the structure, machine or other apparatus or device."

**Master and and Servant—Injury to Servant—Complaint—Employers' Liability Act.**

3. The complaint in a servant's action for injury in the logging business *held* sufficient, at least after verdict, to show that defendant had charge of and was responsible for a work involving risk and danger to the employees, within the Employers' Liability Act (Laws 1911, p. 16; L. O. L., p. xxxvi).

**Master and Servant—Injury to Servant—Nature of Remedy—Employers' Liability Act.**

4. The facts alleged in the complaint, the evidence, and the agreement of defendant's counsel, in an action for injury to an employee in logging *held* to all point to the conclusion that his work was a dangerous one, within the Employers' Liability Act (Laws 1911, p. 16; L. O. L., p xxxvi).

**Master and Servant — Injury to Servant — Question for Jury — Employers' Liability Act.**

5. Whether, within the Employers' Liability Act (Laws 1911, p. 16; L. O. L., p. xxxvi), it was practicable as a measure of care and precaution for the safety of life and limb, without impairing the efficiency of the equipment, to remedy faults complained of, *held*, in a servant's action for injury in logging, a question for the jury.

---

*For the constitutionality, application and effect of Employers' Liability Act, see note in 47 L. R. A. (N. S.), 38.        REPORTER.

Master and Servant—Assumption of Risk—Employers' Liability Act.

6.   The Employers' Liability Act (Laws 1911, p. 16; L. O. L., p. xxxvi), being in one aspect a criminal law, the employee *does not* assume the risk of the employer's violation of it as to duties for the employee's safety.

[As to assumption of risk under Federal Employers' Liability Act, see note in Ann. Cas. 1915B, 481.]

Master and Servant—Contributory Negligence—Employers' Liability Act.

7.   By express provision of the Employers' Liability Act (Laws 1911, p. 16; L. O. L., p. xxxvi), contributory negligence of an employee injured is not a defense, but can be considered only as to amount of damages.

From Columbia: THOMAS J. CLEETON, Judge.

Department 1.   Statement by MR. JUSTICE BURNETT.

This is an action by Frank O. Blair against the Western Cedar Company, a corporation.

At the time mentioned in the complaint the defendant was engaged in the business of logging in Columbia County, Oregon, the outlet of which was down the gulch of a small creek.   By means of a donkey-engine connected with each it operated two cable lines, which we designate for convenience as the pole line and the logging line.   Approaching its engine from the woods the pole line came down the gulch in a northeasterly direction to what we indicate as stump H, where it passed through a pulley, made an angle to the right, and thence went direct to the engine.   The logging line came out of the woods toward its engine north of the pole line on the same side of the ravine down a 23 per cent grade on a course S. 35° 59′ W. to stump C, which was fitted with rollers to facilitate the operation of the cable; thence on an average course of N. 76° W. the line came to stump D, similarly fitted with rollers, and directly past the rollway to the engine. Between stump C and stump D was stump E, standing near the cable, but not attached to it, nor in any way

used in its operation. In making this curve around the stumps the logging cable passed along the steep side of a hill point, and on a sharp downgrade.

The plaintiff was employed by the defendant as a chaser. It is alleged in substance that his duties required him to stand between the two cables at a point where they were distant from each other only about 40 feet, and to watch the approach of the logs on the logging line until they passed the rollers on stump C, when he would follow them to the rollway, unfasten them from the lines, and permit them to roll down to their place of deposit, whereupon the cable would be returned to the woods by the reverse action of its trip line. It appears that his station as directed by the foreman was in the bight of the pole line and outside the curve of the logging line. It is charged that while the plaintiff was thus engaged in his duties three logs hitched to the cable in tandem fashion by short wire ropes, called "chokers," were being drawn in from the woods on the logging line, and that after they had passed stump C the forward end of the rear log struck stump E, whereupon the tension of the line suddenly threw the rear end of the log around, so that it struck the plaintiff and injured him. It is averred in the complaint that the defendant—

"disregarded its duty and carelessly and negligently so placed, arranged and operated its machinery, donkeys, cables blocks, chokers and other appliances and contrivances in such manner and in such position, and carelessly and negligently so permitted and allowed its logging roads to be and become so obstructed, that the same were dangerous and unnecessarily exposed its employees, and particularly this plaintiff, to the danger of personal injuries while engaged in the performance of the work he was directed and ordered to do as such employee, and negligently failed to make,

publish, and enforce suitable rules for the guidance of its employees.''

Going more into particulars about negligence imputed to the defendant, the complaint specifies in substance the following instances: (a) Failure to run the pole cable on the opposite side of the gulch; (b) failure to provide a platform where plaintiff could stand and perform his work; (c) failure to remove stump E from its position on the line of the logway where it was liable to catch, interfere with, divert, and throw logs that were being drawn; (d) permitting chokers to be placed on logs too far back from the front end, and failing to adopt, publish, and enforce suitable rules for the guidance of employees as to the manner in which this work should be done; (e) permitting the cable and trip line of the pole road to be in such a position as to interfere with the plaintiff in his work; and (f) permitting the man in charge of the donkey-engine of that line to draw the logs at an excessive and dangerous rate of speed over the portion of the roadway in question.

The employment of the plaintiff by the defendant, the manner of carrying on the work, and the situation of the plant are all admitted by the answer. The charges of negligence are denied. Affirmatively the defendant pleads in substance that the plaintiff assumed the risk of the work, that he was guilty of contributory negligence, and that the shortcoming, if any, causing the injury, was that of the plaintiff's fellow-servants. The reply traversed the new matter in the answer. From a judgment in favor of the plaintiff, the defendant appeals.

Affirmed.   Rehearing Denied.

For appellant there was a brief over the names of *Messrs. Crawford & Eakin* and *Mr. George W. Mc-*

*Bride,* with an oral argument by *Mr. Thomas H. Craw-ford.*

For respondent there was a brief and an oral argument by *Mr. William H. Powell.*

Mr. JUSTICE BURNETT delivered the opinion of the court.

1, 2. The vital question to be determined is whether the complaint states a cause of action within the terms of what is known as the employers' liability law (Chapter 3, Laws 1911; L. O. L. xxxvi). That is a statute which specifies in its title that it is—

"for the protection and safety of persons engaged * * in any dangerous occupation, and extending and defining the liability of employers in any or all acts of negligence, or for injury or death of their employees, and defining who are the agents of the employer. * * *"

Section 1 of that law enjoins sundry specified duties upon all owners, contractors, subcontractors, corporations or persons whatsoever engaged in certain constructive operations, and concludes with this clause:

"And generally, all owners, contractors or subcontractors and other persons having charge of, or responsible for, any work involving a risk or danger to the employees or the public, shall use every device, care and precaution which it is practicable to use for the protection and safety of life and limb, limited only by the necessity for preserving the efficiency of the structure, machine or other apparatus or device, and without regard to the additional cost of suitable material or safety appliance and devices."

The allegation of the complaint already quoted, to the effect that the defendant had so arranged and operated its plant and roads that the same were dangerous and unnecessarily exposed its employees to the

danger of personal injury, is sufficient to bring the case within the purport of the general clause, above quoted, with which Section 1 of the act concludes. It is argued by the defendant that, because the earlier part of the section prescribes some particular things to be done in certain cases in the way of inspection of all metals, wood, rope, glass, rubber, gutta-percha, or other material used in electric work and in the construction of scaffolding, staging, false work, and the like in building operations, negligence cannot be asserted under the employers' liability law, unless it can be classified under one or more of these specifications. This, however, would be giving to a remedial measure a narrow construction not in consonance with its purpose. Although the statute in question contains a criminal penalty to be visited upon those who violate its precepts, yet the direct expression even of that feature is that it "shall not affect or lessen the civil liability of such persons." In its civil aspect the statute supplies a new remedy, and as such is to be liberally construed. The people in promulgating this law have determined that the old rule was too harsh which imposed upon the laborer, who in general is the least able to sustain it, the full risk of the employment, and compelled him to bear the entire consequence of his own inadvertence, irrespective of its proportion to the negligence of the employer. On the other hand, in the general provision at the end of Section 1 it has more definitely and strictly prescribed the degree of care to be used by those who conduct dangerous industrial operations.

The defendant contends that neither the facts alleged by the pleadings nor disclosed by the testimony on the trial made out a case of negligence under the act in question. The following cases are cited to support that position:

*Statts* v. *Twohy Brothers' Co.,* 61 Or. 602 (123 Pac. 909). The substance of that decision was not to exonerate the defendants from an action by proper parties under the employers' liability law, but to hold that the act in question did not necessarily repeal Section 380, L. O. L., giving a right of action to the personal representatives of a deceased employee, who met his death by reason of the negligence of the employer.

*Lawton* v. *Morgan, Fliedner & Boyce,* 66 Or. 292 (131 Pac. 314, 134 Pac. 1037), simply announces the rule that an owner of property whereon a building is being erected is not liable under the employers' liability law for the negligence of an independent contractor.

*Tamm* v. *Sauset,* 67 Or. 292 (135 Pac. 868), construed the act to apply only to the person actually engaged in the prosecution of the undertaking, and further held the subcontractor to be liable to his own employee to the exclusion of the general contractor, who was not directly engaged in carrying on the work causing the injury.

*Dunn* v. *Orchard Land & Timber Co.,* 68 Or. 97 (136 Pac. 872), construes the general clause already referred to as enlarging the scope of the earlier provisions of Section 1.

*Schulte* v. *Pac. Paper Co.,* 67 Or. 334 (135 Pac. 527, 136 Pac. 5), merely decides that the employers' liability law applies only to cases within the purview of the statute, and in substance declares that it is not necessary for plaintiff to allege directly that he brings his action under the Employers' Liability Act, but that it is sufficient if from the facts stated the court can draw the conclusion that the statute applies to the case made. In other words, it is not necessary to place on a complaint the label, ''This is an action under the employers' liability law.'' The principal ques-

tion decided in that case was that the trial court erred in leaving the jury to decide whether the common law or the statute applied to the issue involved.

In *Schaedler* v. *Columbia Contract Co.,* 67 Or. 412, (135 Pac. 536), the negligence charged was in not maintaining a railing along an elevated plank walk leading under a dock to a steamboat. It appeared that the accident happened, not on account of a lack of railing, but because there was a hole in the walk, and so it was decided that the case stated was not within the provisions of the act requiring a railing around staging more than 20 feet from the ground, but the defendant was otherwise held liable.

In *Isaacson* v. *Beaver Logging Co.,* 73 Or. 28 (143 Pac. 938), the plaintiff, although generally engaged in the logging business, was at the time he received the injury employed in removing from a car a heavy iron spool called a "gipsy," in doing which he stumbled and fell, receiving injury from contact with the spool. The court held that particular work not to be within the scope of the employers' liability law.

3–5. At least after verdict the complaint here is sufficient to show that the defendant had charge of and was responsible for a work involving risk and danger to the employees. In discussing the aspect of contributory negligence the defendant's brief contains this language:

"Plaintiff was placed on this portion of the roadway because there was danger there in conducting these logging operations. * * Extreme watchfulness, extreme care and caution, extreme promptness in action in case anything went wrong, was imposed upon the plaintiff by the position he occupied and the duties imposed upon him. Upon this depended, not only the success of the logging operations, but his own safety and the safety of others in the vicinity of this portion of the roadway."

The facts alleged, the evidence in the record, and the argument of counsel for defendant all point to the conclusion that this was a dangerous work within the meaning of the statute. Whether it was practicable as a measure of care and precaution for the safety of life and limb, without impairing the efficiency of the equipment, to remove the unused stump standing near the line, so logs would not collide with it, or to run the two cables on opposite sides of the creek, or far enough apart, so that in avoiding the dangers of one the plaintiff would not be exposed to the hazards of the other, or to remedy any of the other faults mentioned, were all proper questions of fact to be determined by the jury under the statute.

It is impracticable within the limits of any ordinary enactment minutely to specify every and all manner of precaution to be used in the multiform industries of the country. The statute has devoted considerable attention to electrical and building operations; but it is perfectly competent without particular detail to make the general declaration in the statute already alluded to, and, when facts are stated which show a violation of the duty thus enjoined, the courts cannot refuse to enforce the law as declared by the people.

6. This in effect disposes of the remaining assignments of error adversely to the defendant. They are in substance that the court was wrong in not granting a nonsuit on account of the contributory negligence of the plaintiff and his assumption of the risk of his employment. We have already decided that, on account of the statute being in one aspect a criminal law, it eliminates the feature of assumption of risk, because the employee will not be presumed to have contracted in a manner involving a violation of the statute by the employer in respect to the duties which it enjoins upon him: *Hill* v. *Saugested,* 53 Or. 178 (98 Pac. 524,

22 L. R. A. (N. S.) 634); *Love* v. *Chambers Lumber Co.*, 64 Or. 129 (129 Pac. 492); *Dorn* v. *Clarke-Woodward Drug Co.*, 65 Or. 516 (133 Pac. 351); *Dunn* v. *Orchard Land Co.*, 68 Or. 97 (136 Pac. 872).

7. The enactment itself declares:

''The contributory negligence of the person injured shall not be a defense, but may be taken into account by the jury in fixing the amount of damages.''

The contention of the defendant that contributory negligence is a complete defense is in direct contravention of this statute. In other words, the theory of the defendant is that the cause of action was stated under the rules of the common law making assumption of risk and contributory negligence defenses in bar; but, as we have seen, the complaint comes within the provisions of the employers' liability law, thus precluding the defenses mentioned.

We find no substantial error in the proceedings of the Circuit Court, and its judgment is affirmed.

AFFIRMED.    REHEARING DENIED.

MR. CHIEF JUSTICE MOORE, MR. JUSTICE BENSON and MR. JUSTICE HARRIS concur.

MR. JUSTICE MCBRIDE takes no part in the consideration of this case.