At,pen, J.
This ease arises under subdivision 7 of Section 1027 of the General Code of Ohio, which reads, in part, as follows:
“Sec. 1027. The owners and operators of shops and factories shall make suitable provisions to prevent injury to persons who use or come in contact with machinery therein or any part thereof. * * *
“7. They shall guard all saws, wood-cutting, wood-shaping and all other dangerous machinery.” For convenience we shall call the defendant in error, Hannah Fender, the plaintiff, and the plaintiff in error, the Ohio Automatic Sprinkler Company, the defendant, throughout this opinion.
Plaintiff in this case claims that the Ohio Automatic Sprinkler Company, defendant, has violated the provision of Section 1027, above given, in that there was no safety device nor guard upon the punch-pressing machine, which the plaintiff was operating at the time of her injury, to prevent the machine from repeating and from coming in contact with her person.
Was the court justified in taking the case from the jury?
If the record contains a scintilla of evidence to the effect that the defendant failed to comply with a lawful requirement, and if plaintiff’s action is not barred by the Workmen’s Compensation Act, the judgment of the Court of Appeals must be affirmed.
The requirement contained in the section of the code under consideration was, that the defendant should guard “all dangerous machinery.” Only two questions of ultimate fact can arise in the case:
First: Was the machine in question a dangerous machine?
*152 Second: If so, was it guarded by tbe employer?
As to the first question of fact, the opinion of the Court of Appeals indicates that the trial court held that a punch press was not a dangerous machine. The brief of the plaintiff in error (called the defendant in this opinion) states that the trial court “determined that the machine in question was not dangerous.” The record does not show that this theory formed part of the basis of the court’s ruling. If it did, that ground of the ruling is erroneous. This was a punch press fed by hand and upon the evidence before it the court could take judicial notice that it was dangerous.
The only remaining question of fact in the case is, whether the machine was guarded. Upon that point it suffices to say that there is evidence “that there was no safety device to prevent it from ‘tripping.’ ” There is also evidence in the record tending to show that a device to prevent the machine from tripping was at that time known to the trade.
We come then to the question of law involved in the case as to whether in failing to guard a dangerous machine the employer violated any lawful requirement.
In directing a verdict the trial court doubtless proceeded upon the ground that Section 1027, General Code, subdivision 7, does not constitute a lawful requirement under the authority of American Woodenware Mfg. Co. v. Schorling, 96 Ohio St., 305; Patten v. Aluminum Castings Co., 105 Ohio St., 1, and Toledo Cooker Co. v. Sniegowski, 105 Ohio St., 161.
These cases have been recently decided by a bare majority of this court, and it therefore is incumbent *153 upon us to consider whether or not, within the authority of these cases, General Code, Section 1027, subdivision 7, is a lawful requirement.
The syllabus of American Woodenware Mfg. Co. v. Schorling, supra, reads:
“1. In the construction of amendments to the Constitution or to statutes, the body enacting the amendment will be presumed to have had in mind existing constitutional or statutory provisions, and their judicial construction touching the subject dealt with.
“2. The Industrial Commission Act (103 O. L., 95) provides for the creation of an administrative board with power to supervise all places of employment, to prescribe general rules and requirements concerning all employments and places of employment and particular orders and requirements for particular employers and places of employment, to secure the lives, health, safety and welfare of every employe in such employments, and every frequenter of such places of employment. The purpose and intent of Sections 15 and 16 of the act was to bring all employers within the scope of the jurisdiction and authority of the Commission and to impose on them the obligation to comply with the orders and requirements of the Commission when duly made. The provisions of Sections 15 and 16 are not the lawful requirements referred to by, and within the meaning of, Section 35, Article II of the Constitution.
“3. The term ‘lawful requirement,’ as used in Section 35, Article II of the Constitution, and Section 29 of the Workmen’s Compensation Act (103 O. L., 84), does not include a general course of conduct, or those general duties and obligations of care and *154 caution, which rest upon employers and employes, and all other members of the community, for the protection of life, health and safety.
“4. By the provisions of Section 25 of the Industrial Commission Act an order made by the Industrial Commission to employers generally or to a particular employer, with reference to safe employment or place of employment, is a lawful requirement (until altered in the manner provided for in the act), for failure to comply with which, or with any statute or municipal ordinance prescribing means or methods required to be used to protect the lives, health, safety and welfare of employes, the employer under the proviso contained in Section 35, Article II of the Constitution, and Section 29 of the Workmen’s Compensation Act, is liable to an employe injured by reason of such failure.”
In this case, Schorling, an employe of the American Woodenware Manufacturing Company, was insured under the Workmen’s Compensation Law; Schorling alleged that he was an operator on a ripsaw and was ordered by his foreman to assist employes in pushing a load of lumber upon a small car operating on tracks. In his petition he alleged that the lumber was piled 10 or 12 feet high, so that it overhung, and that a slight force could and did cause the lumber to be overbalanced, falling upon him and pinning him beneath it. The plaintiff pleaded that the company well knew that the place of employment in which he was ordered to work was unsafe. A demurrer to the petition was overruled, and a verdict for the plaintiff was affirmed in the Court of Appeals. This court reversed that action of the lower courts. The statute under which the plaintiff pleaded his case *155 was the Industrial Commission Act (103 O. L., 95), which provides, in Sections 15 and 16 (Sections 871-15 and 871-16, General Code), that employers shall furnish their employes with safe places to work. Sections 15 and 16 of the act read:
“See. 15. Every employer shall furnish employment which shall be safe for the employes therein, and shall furnish a place of employment which shall be safe for the employes therein, and for frequenters thereof, and shall furnish and use safety devices and safeguards, and shall adopt and use methods and processes, follow and obey orders and prescribe hours of labor reasonably adequate to render such employment and places of employment safe, and shall do every other thing reasonably necessary to protect the life, health, safety and welfare of such employes and frequenters.
“Sec. 16. No employer shall require, permit or suffer any employe to go or be in any employment or place of employment which is not safe, and no such employer shall fail to furnish, provide and use safety devices and safeguards, or fail to obey and follow orders or to adopt and use methods and processes reasonably adequate to render such employment and place of employment safe, and no employer shall fail or neglect to do every other thing reasonably necessary to protect the life, health, safety and welfare of such employes or frequenters; and no such employer or other person shall hereafter construct or occupy or maintain any place of employment that is not safe.”
Judge Johnson, writing the opinion of the court, held, in the Schorlmg case, that an action for simple negligence is not an action for violation of a law *156 ful requirement within Section 35, Article II of the Ohio Constitution, and Section 29 of the Workmen’s Compensation Law (Section 1465-76, General Code), and that the plaintiff had pleaded an action for simple negligence.
He also concluded that the plaintiff had no remedy under Sections 15 and 16 of the Industrial Commission Law, as they did not embody “lawful requirements” within the meaning of Section 35, Article II of the Constitution, and Section 29 of the Workmen’s Compensation Act (103 O. L., 84).
He held that these sections were written simply in order to bring employers within the scope of the jurisdiction and authority of the Commission, and not to establish “lawful requirements.”
It will be observed that the Schorling case specifically held that a statute might constitute a “lawful requirement.” It defined (pages 312 and 313 of 96 Ohio St., 117 N. E., 366, Ann. Cas. 1918D, 318) a “lawful requirement” to be a failure to comply with a municipal ordinance, with a statute, or with the lawful order of a duly authorized officer. Judge Johnson did, however, in the course of his opinion, and in the syllabus, lay down the law that the term “lawful requirement” does not include “a general course of conduct, or those general duties and obligations of care and caution which rest upon employers and employes, and all other members of the community, for the protection of life, health and safety.” Having held, therefore, that the term-“lawful requirement” included a statute, but did not include a general course of conduct, or general duties and obligations of care and caution, the question was left open whether a statute which laid down a general *157 course of conduct or general duties and obligations of care and caution constituted a lawful requirement. This question was very shortly decided in the negative in the case of Patten v. Aluminum Castings Co., 105 Ohio St., 1, 136 N. E., 426, the syllabus of which reads:
“1. The term ‘lawful requirement,’ as used in Section 35, Article II of the Constitution, and in Section 1465-76, General Code, comprehends such lawful, specific, and definite requirements or standard of conduct as would advise an employer of his legal obligations.
“2. Section 12593, General Code, providing that employers, who knowingly or negligently furnish or erect unsuitable or improper scaffolding, shall be punished by fine or imprisonment, or both, is indefinite and general in its requirements. It merely prescribes a course of conduct recognizable at common law. Its provisions do not comprise ‘lawful requirement,’ within the meaning of the constitutional or statutory provisions referred to. (American Woodenware Mfg. Co. v. Schorling, 96 Ohio St., 305, approved and followed.)”
In this Patten case the court went one step farther than in the Schorling case, and held, upon the facts, that the particular statute there construed, which prescribed a general course of conduct, did not constitute a lawful requirement. The same holding was maintained in Toledo Cooker Co. v. Sniegowski, supra, which was affirmed, without opinion, upon authority of the Patten case.
The Patten case was decided principally upon the theory that the statute in question (Section 12593, Genera] Code) was vague and indefinite; that under *158 that provision of the Code the employer could not tell what his duty was to his employe until after the jury by their verdict had determined that the employer had failed to provide suitable scaffolding; that juries might not agree; and that therefore employers were not advised in advance of their obligations under the law.
The reason announced for the holding in the Patten case, then, is not that a statute may not, within Section 35, Article II, of the Ohio Constitution, and Section 29 of the Workmen’s Compensation Law,, constitute a lawful requirement, but is that Section 12593 of the General Code is so vague as to be unenforceable. The further conclusion of the Patten case was also, apparently, that a law prescribing a general course of conduct cannot constitute a lawful requirement, because it cannot be definite and specific. (105 Ohio St., 9,136 N. E., 426.)
It is evident that if Section 12593, General Code, is so vague that it does not constitute a lawful requirement, the section of the statute which we are considering here, namely, Subdivision 7, of Section 1027, General Code, is also so vague that it cannot constitute a lawful requirement. Comparing them, we find:
"Sec. 12593. Liability of Employer for Improper Ladders or Scaffolding; Penalty—Whoever, employing or directing another to do or perform labor in erecting, repairing, altering or painting a house, building or other structure, knowingly or negligently furnishes, erects or causes to be furnished for erection for and in the performance of said labor unsuitable or improper scaffolding, hoists, stays, ladders or other mechanical contrivances which will not give *159 proper protection to the life and limb of a person so employed or engaged, shall be fined not more than five hundred dollars or imprisoned not more than three months, or both.”
“Sec. 1027. The owners and operators of shops and factories shall make suitable provisions to prevent injury to persons who use or come in contact with machinery therein or any part thereof as follows: * * *
“7. They shall guard all saws, wood-cutting, wood-shaping and all other dangerous machinery.”
The provisions of Section 1027, “shall make suitable provisions to prevent injury” and “shall guard all * * * dangerous machinery,” are obviously no more definite than the provision of Section 12593, that improper scaffolding shall not be erected.
Are these two sections, both of which embody requirements as to a general course of conduct, so vague as to be unenforceable ? Turning to the general law it is marked that both this court and the courts of other states have held entirely counter to the ruling of the SchorKng and Patten cases upon this point. It is in fact the general rule in jurisdictions of authority in the. United States that statutes of this kind, prescribing a general course of conduct for employers, no more definite and specific in their wording than Section 1027, subdivision 7, are and have been, for a considerable period of time, enforced ; in other words they are enforceable and do constitute lawful requirements in the ordinary meaning of the words.
Some of the cases construing and sustaining statutes similar to Section 12593 and Section 1027, General Code—and showing that statutes drawn in *160 phrasing very similar and often no less general than Sections 1027 and 12593, General Code, have been and are now being enforced in important United States jurisdictions—are as f ollows:
Jeffersonville Mfg. Co. v. Holden, 180 Ind., 301, 102 N. E., 21, upheld a statute that certain machinery should be “properly guarded.” (Syllabus, par. 1.)
Blair v. Western Cedar Co., 75 Or., 276, 146 Pac., 480, held that a mandatory duty is imposed upon the employer by a law which requires employers to “use every device, care, and precaution which it is practicable to use for the protection and safety of life and limb.”
The Illinois statute requiring power-driven machinery to be guarded was enforced in Forrest v. Roper Furniture Co., 267 Ill., 331, 108 N. E., 328; and Streeter v. Western Wheeled Scraper Co., 254 Ill., 244, 98 N. E., 541, 41 L. R. A. (N.S.), 628, Ann. Cas., 1913 C., 204, held that the statute providing that all power-driven machinery, etc., shall be properly inclosed, fenced, or otherwise protected, and that “all dangerous places in and about mercantile establishments, factories, mills, or workshops, near to which any employe is obliged to pass, or to be employed, shall, where practicable, be properly inclosed, fenced or otherwise guarded,” imposed an absolute duty upon the employer.
The Minnesota statute requiring that “all saws, planers * * * all set screws, drums, and machinery * * * as far as practicable, shall be fenced or otherwise protected” was enforced in Davidson v. Flour City Ornamental Iron Works, 107 Minn., 17, 119 N. W., 483, 28 L. R. A. (N.S.), 332, 131 Am. St. Rep., 433.
*161 The Oklahoma statute (Section 3746, R. L., 1910) provides that in a factory or an institution where machinery is used “All machines shall be provided with loose pulleys and all vats, pans * * * set screws and machinery of every description shall be properly guarded.” The Supreme Court of that state, in Wick v. Gunn, 66 Okl., 316, 169 Pac., 1087, 4 A. L. R., 107, enforced this law, holding that it is the duty of employers to provide proper guards and safety appliances for machinery used by workmen.
A similar Kansas statute was passed upon by the United States Supreme Court in the case of Bowersock v. Smith, Adm’x., 243 U. S., 29, 37 Sup. Ct., 371, 61 L. Ed., 572. In this case the Kansas law, which requires that machinery be properly and safely guarded, was sustained.
This Kansas statute (Chapter 356 of the Laws of Kansas of 1903 [Gksn. Stat. 1909, §$ 4676 to 4683]), provides as follows: Section 1. That elevators, hoisting shafts, and well holes be inclosed or secured. Section 2. That stairways shall be equipped with hand rails, and shall be secured at sides and ends, that certain doors shall be kept unfastened. Section 4. That “All * * * machinery
of every description used in a manufacturing establishment shall, where practicable, be properly and safely guarded, for the purpose of preventing or avoiding the death of or injury to the persons employed or laboring in any such establishment; and it is hereby made the duty of all persons owning or operating manufacturing establishments to provide and keep the same furnished with safeguards as herein” set forth.
The United States Supreme Court, in upholding *162 this statute, said (243 U. S., at page 34, 37 Sup. Ct., 373 [61. L. Ed., 572]):
“That government may, in the exercise of its police power, provide for the protection of employes engaged in hazardous occupations by requiring that dangerous machinery be safeguarded * * * is undoubted.”
In the case of Evansville Hoop & Stave Co. v. Bailey, 43 Ind. App., 153, on page 159, 84 N. E., 549, on page 551, the court, in enforcing the statute requiring dangerous machinery to be “properly guarded,” said:
“The statute upon which the action is founded simply requires that the saw or other dangerous machine be ‘properly guarded,’ without specifying in what manner the same is to be guarded, or what dangers are to be guarded against, nor does it in express terms designate what persons or things are designed to be protected by its provisions. What is meant, therefore, by the term ‘properly guarded,’ must be determined by a proper construction of the statute.
“It is a matter of common knowledge that, owing to the spirit of invention and the demands of business, the use of powerful, swiftly moving and dangerous machinery in manufacturing establishments in this country has been constantly growing at an ever-increasing rate for many years, and at the same time the casualty list from accidents resulting from the use of such machinery has been constantly swelling until at the date, of the passage of this law it had reached alarming proportions. Both the title of the act, which declares it to be ‘An act concerning labor, and providing means for protecting the liberty, safe *163 ty and health of laborers,’ etc., and the provisions of the law, clearly show that this condition of affairs was in the legislative mind in the enactment of this law, and was an evil sought to be remedied thereby. Its obvious purpose, among other things, was to reduce the hazard to those employed about dangerous machinery, to protect them from injury by accidental contact therewith, and it was evidently designed to protect the employe, not only from unavoidable accidents, but from his own negligent and careless acts which might result in his injury from accidental contact with such dangerous machinery.”
The first paragraph of the syllabus in the Evansville case reads as follows:
“1. Factory Act, § 9 (Acts 1899, p. 234, c. 142), makes it the duty of the owner of a manufacturing establishment to ‘properly guard’ saws, etc. Held, that the failure to so guard a saw used in the establishment, which could be ‘properly guarded’ without interfering with its efficient use, constitutes negligence per se.”
In Slater v. Atchison, Topeka & Santa Fe Ry. Co., 91 Kan., 226, at page 230, 137 Pao., 943, at page 944, the court says:
“Society has made rapid progress in recent years in the development of humanitarian ideas and in a broader realization of the power of the state and the obligations resting upon it to enact laws to prevent the frightful toll of death and disability in hazardous occupations and in the use of dangerous machinery. Legislation has followed with somewhat halting steps, and the courts have quite generally responded to the awakened public conscience, albeit their progress has naturally been slower than that of Legislatures.”
*164 The statute enforced in this case required machinery to be guarded, “where practicable,”
It will be observed that while Subdivision 7 of Section 1027, General Code, does not contain the word “practicable,” it is in pari materia with Section 871-13, General Code. Subdivision 11 of this section of the statute reads as follows:
“The terms ‘safe’ and ‘safety,’ as applied to any employment or a place of employment, shall mean such freedom from danger to the life, health, safety or welfare of employees or frequenters as the nature of the employment will reasonably permit, including requirements as to the hours of labor with relation to the health and welfare of employees. ’ ’ Construing Section 871-13, Subdivision 11, with Subdivision 7 of Section 1027, we therefore find that the latter section becomes similar in its meaning to the statutes quoted above, which contain the phrase “where practicable” or similar phrases.
It will be further noted that the statute quoted in Jeffersonville Manufacturing Co. v. Holden, supra, was attacked upon the specific ground that it was invalid for uncertainty because of the use of the term “properly guarded.” The statute was upheld. 180 Ind., page 304. To the same effect are Booth v. State, 179 Ind., 405 (page 411, syllabus No. 6) and State v. Louisville mid Nashville Railway, 177 Ind., 553 (syllabus, numbers 7 and 8).
If Section 1027, General Code, and Section 12593, General Code, are unenforceable because of their vagueness, how can any law which imposes a common-law duty of care be upheld? The duty of care is never well defined. It varies greatly under the circumstances of each case, requiring at times spe *165 cific acts, and at other times a general course of conduct. Juries frequently differ as to what the obligation of care is under the same or similar circumstances. Yet the violation of the common-law duty of care, a duty often imposing a general course of conduct, may lead to a charge of criminal manslaughter, with heavy penal sentence. Such a law was up held by this court shortly before adjudication of the Schorlmg case. (State v. Schaeffer, 96 Ohio St., 215, 117 N. E., 220, L. R. A., 1918B, 945, Ann. Cas. 1918E, 1137.) ¿i that case, the validity of Section 12603, General Code, which made it a crime to operate an automobile at a speed greater than is reasonable or proper, having regard for width, traffic, use, and the general rules of such road or highway, or so as to endanger the property, life, or limb of any person, was challenged upon the specific ground that the section was so general and indefinite that an automobile owner could not know what was required of him. The siatute certainly enjoins a general course of conduct upon drivers of motor vehicles. This court unanimously upheld the .validity of that statute.
In the case of Leis v. Cleveland Ry. Co., 101 Ohio St., 162, 128 N. E., 73, the validity of certain ordinances of the city of Cleveland was questioned. The ordinances read as follows:
“Any motorman or other person or persons having the charge or control of any motor or other car being operated upon any track or any street railroad in the city of Cleveland shall exercise all possible care and vigilance upon approaching any other car which has stopped for the purpose of receiving or letting off a passenger or passengers.
*166 “Any car approaching another car which has been stopped for any purpose, and any car approaching a curve shall do so with the greatest care; and shall be under complete control of the person running the same.”
These ordinances were attacked upon the specific ground that they were indefinite and uncertain. They certainly enjoined a general course of conduct upon motormen. This court, by unanimous judgment, upheld the validity of the ordinances.
Exactly the same objections could be urged to Section 12603, and to the Cleveland ordinances construed in the Leis case, as were urged to Section 12593, General Code, in the Patten case, and as are urged here to Subdivision 7 of Section 1027, General Code.
It appears, then, that a statute prescribing a general course of conduct may be so definite as to be enforceable if it prescribes a general course of conduct for motormen or automobile drivers. What the distinction is, however, between the statute which prescribes a general course of conduct in automobile driving, and in the operation of a street car, and a statute which prescribes a general course of conduct in operating a factory, has never been defined by this court.
Turning to consider the question from the standpoint of reason and good conscience, what is the meaning of the words “lawful requirement” as used in the Constitution and in the Workmen’s Compensation Law? What did Section 35, Article II of the Ohio Constitution, mean, when it said: “Laws may be passed establishing a state fund to be created by compulsory contribution thereto by employers * * * taking away any or all rights *167 of action or defenses from employes and employers; bnt no right of action shall be taken away from any employe when the injury, disease or death arises from failure of the employer to comply with any lawful requirement for the protection of the lives, health and safety of employes.” (Section 1465-76, General Code.)
What did Section 29 of the Workmen’s Compensation Act, in effect at the time the Schorlmg case was decided, mean when it re-enacted the provisions of the Constitution and provided that when an employe is injured in the course of his employment, and such injury has arisen from the willful act of such employer, or from his failure to comply with any lawful requirement for the protection of the lives and safety of employes, then, in such event, nothing in the act contained shall affect the civil liability of such employer?
Webster’s International Dictionary defines “lawful” as follows: Constituted or authorized by law; rightful; conformable to law; allowed by law; legitimate; competent. “Requirement” is defined as being that which is required; an imperative or authoritative command.
That the provisions of Sections 15 and 16 of the Industrial Commission Act (Sections 871-15 and 871-16, General Code), construed in the Schorlmg case, Section 12593 of the General Code, construed in the Patten case, and Subdivision 7 of Section 1027 of the General Code, before us here, are laid down by law is self-evident. Do they constitute a requirement? They enjoin upon every employer, owner, and operator of a shop or factory a mandatory duty. *168 They embody, in the words of Webster, an authoritative and imperative command.
Conld the Constitution or the Legislature have used any more all-ihclusive phrase than this, that an employe could sue his employer in spite of the provision of the Industrial Commission Act, if the employer violated any “lawful requirement?” No exception was made by the people nor by the Legislature when they used that phrase. The exception in-grafted in the law, namely, that it did not apply to requirements embodying a general course of conduct, was written into those all-inclusive words “by judicial interpretation.”
That the Constitution itself does indicate one exception to the all-inclusive meaning of the phrase, “lawful requirement,” this court agrees. It does not include a cause of action for simple negligence. This fact is evident from the plain words of the Constitution, Section 35, Article II, that:
“Laws may be passed * * * taking away any or all rights of action or defenses from employes and employers; but no right of action shall be taken away from any employe when the injury, disease or death arises from failure of the employer to comply with any lawful requirement for the protection of the lives, health and safety of employes.”
“If,” as Judge Johnson stated tersely in the Schoriing case, supra, “the failure to comply ‘with a lawful requirement’ includes an act which was actionable negligence simply because of the rules of common law, then the portion of the section which authorizes the taking away of any or all rights of action or defenses of employes and employers would be practically meaningless and inoperative. We *169 should be holding that embodied in the same section was power to take away all rights of actions or defenses of employes and employers, and also a practical denial of power to take away any right of action.”
An employer who has complied with the Compensation Law is entitled to some protection against suits for simple common-law negligence, in consideration of the premiums paid by him into the insurance fund. It is therefore evident that the term “lawful requirement,” as used in Section 35, Article II of the Ohio Constitution, and in Section 29, of the Workmen’s Compensation Act (Section 1465-76, General Code), does not include laws requiring a general course of conduct embodying general duties and obligations of care and caution, which constitute the common-law duty not to be negligent. If this were the sole basis of the judgment in the Schorling case, it might be concurred in by all members of the court.
In this connection, does this Section 1027, subd. 7, merely declare a common-law duty? To decide this question let us examine the statute. It is interesting to note that the statute has been amended. In its original form the opening section of the act, 94 O. L., 42, now Section 1027, General Code, read:
“Section 1. That owners and operators of factories and workshops, which terms shall mean all manufacturing, mechanical, electrical and mercantile establishments, and all places where machinery of any kind is used or operated, shall take ordinary care, and make such suitable provisions as to prevent injury to persons who may come in contact with any such machinery, or any part thereof; and such *170 ordinary care and such suitable provisions shall include * * *”
As amended in 1911 (102 O. L., 428), the opening paragraph of Section 1027 reads:
“The owners and operators of shops and factories shall make suitable provisions to prevent injury to persons who use or come in contact with machinery therein or any part thereof as follows: * * *
“7. They shall guard all saws, wood-cutting, wood-shaping and all other dangerous machinery.” As originally written, this enactment provided simply that the owner of a factory or workshop should perform the old duty of reasonable care, that he should take reasonable care to prevent injury to employes, and that he should take reasonable care to guard dangerous machinery. Is this the duty still enjoined in General Code, Section 1027 ?
The duty enjoined upon the owner and operator of a shop or factory in Section 1027, as now enacted, is enjoined upon him by statute and not by the common law. It is not that he shall use reasonable care to prevent injury to his employes; it is that he shall make suitable provisions to prevent injury. It is not that he shall take reasonable care to guard all saws, wood-cutting and all other dangerous machinery; it is that he shall guard all saws, wood-cutting and all other dangerous machinery.
These provisions do not constitute an absolute liability, nor make the employer an insurer against injuries to employes. The general requirement of “suitable provisions to prevent injury” and the specific requirement that “they shall guard” must be construed in the light of the definitions of “safe” and “safety” in Section 871-13, General Code, and *171 should be so administered as only to require “such freedom from danger to the life, health, safety or welfare of employes or frequenters as the nature of the employment will reasonably permit."
Applying this general statement to the instant ease, it is incumbent upon the plaintiff to show that some guard could have been attached to this punch press which would have prevented repeating without materially impairing the efficiency of the machine. If no guard had been discovered nor invented at the time of the injury, this employer could not be held responsible for the omission.
The duty imposed upon an employer under this section is part of a new system relative to industrial accidents by which it was intended to substitute, in lieu of the original rule requiring the master to come up to the standard of reasonable care, the statutory duty to make suitable provision for the safety of his employes. The Legislature raised this standard from ordinary care, under the circumstances of the case, to a standard of taking suitable measures to prevent injury. While Section 1027 does embody and require a general course of conduct, general duties, and obligations of care and caution, it is not merely declaratory of the common-law duty. That being the case, this statute does not fall within the class of requirements for the violation of which the employer may not be sued under the Workmen’s Compensation Act. It does not embody a simple common-law duty, but requires a statutory duty, and this constitutes a lawful requirement.
The court holds that any “lawful requirement," as the term is used in Section 35, Article II of the Constitution, and Section 29 of the Workmen’s *172 Compensation Law (Section 1465-76, General Code; 103 O. L., 84), means any requirement imposed by law, including statutes and ordinances, lawful orders of duly authorized officers, specific and definite requirements constituted by law, and laws embodying in general terms duties and obligations of care and caution, and further includes requirements relating to safety of the place of employment and to the furnishing and use of devices, safeguards, methods, and processes designed for the reasonable protection of the life, health, safety, and welfare of employes.
A further and broader inquiry arises at this point —one which indicates the danger of adjudication such as that which in the Patten case and the Schorling case restricted the meaning of the words “lawful requirement. ’ ’ If a statute which prescribes a general course of conduct does not constitute a lawful requirement within Section 35, Article II of the Ohio Constitution, does any statute which prescribes a general course of conduct constitute a lawful requirement? Can any statute which embodies general duties of care and caution be enforced, if it is not a lawful requirement? Is this court to hold, in ierms, that the Legislature cannot prescribe general duties? If such a statute as that exemplified by Section 12593, or Section 1027, of the General Code, does not constitute a lawful requirement under Section 35, Article II of the Ohio Constitution, it is difficult to see how a statute prescribing general duties ever could constitute a lawful requirement, or what words the Legislature or the sovereign people of the state could use to give such an enactment the vigor of law.
*173 It is to be observed in this connection that the Constitution of the state of Ohio provides that laws may be passed to provide for the safety of employes, (Section 34, Article II of the Ohio Constitution.) This constitutional provision indicates that the paramount purpose in industrial legislation in this state is not payment for injuries, not the giving of money, which can never compensate for the loss of arms, eyes, health, or life, but reasonable protection for the health, strength, and vitality of the worker.
That Section 1027 and Section 12593 of the General Code, and Sections 15 and 16 of the Industrial Commission Act (Sections 871-15 and 871-16, General Code), were enacted for the purpose, not of affording compensation, but for the purpose of requiring the employer to conserve human life and human energy, is evident upon their face. That purpose is legally subserved by the enactment of such general requirements as those contained íd these statutes. It is impossible within the limits of legislative expression to tell an employer what he must do with every bolt, bar, belt, pulley, dynamo, and press; with every kind of machine, place, or condition, existing in bis factory. From business experience he knows better than the legislature what those conditions are *, from trade experience he knows better than the legislature how wise and humane employers have controlled them. The law places upon the employer the burden of using conservation methods, upon the ground that he not only controls the industry but also reaps much of the benefit from industry, and rightly orders him to conserve health and life in carrying on his industrial enterprises.
*174 It is self-evident that this purpose is nullified by holding too general to constitute lawful requirements statutes phrased as are Sections 15 and 16 of the Industrial Commission Act and Sections 12593 and 1027 of the General Code. If these and other similar statutes embodying general courses of conduct are not lawful requirements, so far as their enforcement is concerned, a great body of humane law is abrogated. If a general course of conduct cannot be compelled, under Section 35, Article II of the Constitution, as a lawful requirement, the power of the Legislature to enact social legislation is sadly curtailed. Because of the plain purpose and provisions of the Ohio Constitution, because of the unmistakable meaning of the statute, because of the weight of authority in the United States, and in order to carry out the beneficent spirit of the industrial legislation which was made possible by the adoption of the Constitution in 1912, a majority of the court hold that the doctrine announced in American Woodemvare Mfg. Co. v. Schorling, supra, Patten v. Aluminum Castings Co., supra, and Toledo Cooker Co. v. Sniegowski, supra, is not the law, and overrule those cases.
Under this view of the meaning of the term “lawful requirement” it is evident that plaintiff’s action is not barred by the Workmen’s Compensation Act.

Judgment affirmed.

Marshall, C. J., Wanamakkr and Day, JJ., concur.
Robinson, Jones and Matthias, JJ., dissent.