Argued April 25; affirmed June 5, 1945

ANNEREAU *v.* EWAUNA BOX CO.

(159 P. (2d) 215)

Before BELT, Chief Justice, and ROSSMAN, KELLY, BAILEY, LUSK, BRAND and HAY, Associate Justices.

*Ben Anderson*, of Portland (William P Lord, of Portland, on the brief), for appellant.

*Richard B. Maxwell*, of Klamath Falls (Farrens & Maxwell, of Klamath Falls, on brief), for respondent.

HAY, J.

Plaintiff, the administrator of the estate of Ralph T. Wood, deceased, prosecutes this appeal from a judgment of involuntary nonsuit. The action was brought under the Employers' Liability Act for damages for the death of plaintiff's intestate.

The complaint alleges, in substance, that the defendant operates a sawmill at Klamath Falls, Oregon; that Wood was employed by it as a "fuel feeder"; that defendant maintains a fuel bin or fuel house for the storage of hog fuel and sawdust used by it as fuel in its furnaces; that such fuel, as needed, is carried out of the fuel house by a heavy chain conveyor which operates over the bottom of the fuel house; that, on June 13, 1943, Wood was directed by defendant to enter the fuel house to break down the fuel pile in order to supply the conveyor; that, while he was so engaged, the fuel pile caved in upon him, "causing him to be buried in fuel, to suffocate and thereby causing his immediate death"; that defendant was careless and negligent in the premises, and violated the Employers' Liability Act, in that it failed to use every device, care and precaution practicable to use for the safety of the lives and limbs of its employees, including Wood; that it would have been practical for defendant to have used one or more of certain described devices and precautions, any of which, without impairing the efficiency of the operation, would have prevented the

disaster complained of; and that defendant's negligence was the proximate cause of Wood's death. General damages in the sum of $45,360 were demanded. The defendant answered by general denial, except that it admitted that Wood had been employed by it as fuel feeder, that he was of the age of fifty-four years, and that he met his death on the date alleged.

The evidence on the part of the plaintiff disclosed that the defendant's fuel house is about eighty feet long by about thirty feet wide. Sawdust and hog fuel are stored therein to a depth of about twenty feet. Five separate conveyor chains run, from east to west, along the bottom of the bin, parallel to each other and at right angles to the length of the building. The chains are operated separately, beginning with No. 1, which is the southerly chain. When all of the fuel within reach of chain No. 1 has been removed, that chain is stopped and chain No. 2 is started, and so on. One of Wood's duties was to enter the fuel house and "break down" the fuel whenever it became packed and would not feed to the conveyor chain by gravity. In operation, the conveyors first remove the fuel at the westerly side of the fuel house. There are doors upon that side, and one of these is situated near the west end of chain No. 2. At about ten o'clock p. m. of the day mentioned, Wood's dead body was found lying between chain No. 1 and chain No. 2. That part of the fuel house served by chain No. 1 had been emptied of fuel. That part served by chain No. 2 was empty for a distance estimated at from one-third to two-thirds of the length of the chain, that is to say, for from ten to twenty feet from the west side of the bin. Immediately south of chain No. 2, in the vicinity of the doorway, there was a level layer of fuel. We gather from the

evidence that this layer was quite shallow and that the area thereof extended only a few feet easterly from the doorway. Beyond the level area, there was a ridge of fuel between the two chains, about eight or ten feet high and extending for six or eight feet easterly. From thence, easterly and northerly, the fuel sloped, at an angle of about forty-five degrees from the vertical, up to a height of about twenty feet. Chain No. 2 was running when the body was found, but was carrying no fuel. The body was in a kneeling position, face downward, with head toward the doorway. It was covered with sawdust to a depth of three or four feet at the lower extremities, decreasing in depth toward the head. Decedent's cap was on his head and was clear of the sawdust. His right hand and right foot were also in the clear. The right foot was on or near the No. 2 chain, but apparently was not entangled in it. There were no eye-witnesses to the tragic occurrence.

■ In passing upon the propriety of the trial court's action in sustaining a motion for involuntary nonsuit, the plaintiff is entitled to have the appellate court place upon his evidence the construction most favorable to him of which it is reasonably susceptible. 3 Am. Jur., Appeal and Error, section 945. This we shall endeavor to do.

Appellant contends that, while there were no eye-witnesses, there was presented at the trial proof of a series of relevant facts from which the jury, applying thereto the gauge of the ordinary experience of mankind, would have been justified in finding a verdict in his favor. The evidence established that Wood entered the fuel house at about 9:30 p. m., for the purpose of breaking down fuel to feed the conveyor chain. Shortly thereafter, the conveyor, which had been run-

ning empty, began delivering fuel into the boiler room. At about 9:45 p. m., Wood was seen by the witness Carlson, standing outside of the fuel house. A little later than 9:45, fuel ceased coming to the boiler room, and, at about 9:55, the witness Bieg, a fireman, went to the fuel house to investigate, and found Wood's body, as related above.

■ The complaint, as stated, alleged that Wood met his death by suffocation, brought about by his being entrapped in a cave-in of fuel. The evidence with respect to the proximate cause of the occurrence must be tested by its relevancy to those allegations. If it failed to establish such allegations, a nonsuit was properly awarded. *Horn v. National Hospital Assn.*, 169 Or. 654, 131 P. (2d) 455.

Appellant insists that only one conclusion is possible from the evidence, namely, that Wood was required to work in an extremely dangerous fuel house; that defendant failed to exercise every care and precaution required by the Employers' Liability Act in the premises; and that Wood entered the fuel house to carry out his ordinary duties, was caught in a cave-in of the fuel, and was thereby suffocated.

There was introduced in evidence by appellant the deposition of Dr. Joseph Beeman, a pathologist, who is Director of the Crime Detection Laboratory of the Department of State Police. The deposition disclosed that, at the request of the Klamath County coroner, Dr. Beeman made an examination of certain portions of the tissues and body of the decedent, in order to determine the presence or absence of injury or disease. As the result of such examination, he found that the windpipe and its branches, and also the lungs, were filled with foreign matter consisting of particles

of meat and fat. The lungs were "ballooned out" and had areas of hemorrhage over their surfaces. This was an indication, according to the witness, that they had been subjected to some form of suffocation. The foreign matter in the windpipe and lungs was vomit. A microscopic examination thereof showed that it contained no sawdust or other wood fiber. The witness was of the opinion that Wood died as a result of asphyxiation through inhalation of vomit. He stated that, in cases of acute heart failure, it often happens that vomiting occurs. On cross-examination, however, he said that he found no significant changes in the valves, muscles and blood vessels of Mr. Wood's heart, and that there was nothing about the heart condition, that he could determine, which would have "prevented an individual from living a normal life". He said further that it was very possible, and even probable, that sudden pressure upon one's body by the caving-in of a foreign substance, such as sawdust, would cause the regurgitation of food. Examination of a portion of Wood's skull showed that he had suffered a traumatic injury thereto.

In support of his contention that the circumstantial evidence was sufficient to have supported a verdict in his favor, appellant has cited the following: *Linsteadt v. Louis Sands Salt & Lumber Co.*, 190 Mich. 451, 157 N. W. 64; *Western Grain & Sugar Products Co. v. Pillsbury*, 173 Cal. 135, 159 P. 423; *Hartford Ins. Co. v. Central R. R.*, 74 Or. 144, 144 P. 417; *Sullivan v. Mountain States Power Co.*, 139 Or. 282, 9 P. (2d) 1038; *Goldfoot v. Lofgren*, 135 Or. 533, 296 P. 843; *Grant v. Baker*, 12 Or. 329, 7 P. 318. The first two of these cases arose under workmen's compensation acts. The Linsteadt case is relied upon especially, as being based upon facts

nearly identical with those in the case at bar. In workmen's compensation cases the scope of the inquiry is limited by the terms of the applicable statutes. The Linsteadt and Western Grain cases simply affirmed findings of industrial accident boards or commissions, based upon competent evidence, to the effect that the respective workmen involved died from injuries which arose out of and in the course of their employment, within the terms of the applicable statutes. The rule applied in the Linsteadt case (which does not obtain under the Oregon act) was that, where competent evidence supports the findings of the board or commission, the court, in the absence of fraud, will not disturb such findings, even although, upon the same evidence, it might have reached a different conclusion. The only question involved was as to whether or not the injury arose out of and in the course of decedent's employment. In the Western Grain case, the court held that the evidence was sufficient to justify the findings of the commission that the decedent died by accidental violence arising out of and in the course of his employment. Neither case, in our opinion, is authoritative upon the question before us here. The remaining cases cited were actions for negligence. In each, the evidence established that plaintiff suffered the injury complained of, and, in proof of the negligence of the defendant and that such negligence was the proximate cause of the injury, presented a single chain of relevant and competent circumstances, from which chain the jury were permitted to draw the conclusion that the defendant was culpably negligent in accordance with the allegations of the complaint.

In the instant case, however, more than one chain of circumstances is in evidence. Appellant selects one,

namely, that Wood was found dead, lying in the fuel house. His head was injured. His body was buried in sawdust, and some sawdust was in his mouth and nostrils. The conveyor chain was running empty. From these facts he deduces that decedent was suffocated by being buried in a collapse of fuel, and that most of the collapsed fuel was afterwards carried off by the conveyor. Respondent, on the other hand, suggests that it is impossible, from the evidence, to deduce the cause of death with reasonable certainty. We are inclined to agree. There was evidence that the man suffered from a pathological cardiac condition, and the proof indicated that he died from suffocation produced by aspiration of vomit, which probably resulted from his heart condition. He may have fallen on the conveyor chain and injured his head and afterwards dragged himself into the position in which he was found. He was lying on, or in, a low ridge of fuel to the south of the conveyor, and the circumstances are susceptible of the deduction that he collapsed against this ridge, and that sawdust therefrom settled partially over his body. It is true that the vomiting may have resulted from pressure of sawdust, but it is at least equally probable that it resulted from heart failure. It would seem to be unlikely that the slight head injury was caused by sawdust falling upon the man, and much more likely that he fell and struck his head against the conveyor in falling.

■■ The facts are as consistent with respondent's theory as with appellant's. The circumstantial evidence, with equal reason, might have supported two different conclusions respecting the proximate cause of Wood's death, for one of which the respondent could not have been held liable. The jury, in our opinion,

could, in any event, have found a verdict against respondent only by resorting to speculation and conjecture, in which the law does not permit them to indulge. We think that the trial judge ruled correctly in sustaining respondent's motion for a judgment of involuntary nonsuit. *Merriam v. Hamilton,* 64 Or. 476, 130 P. 406; *Goldfoot v Lofgren,* supra; *Sullivan v. Mountain States Power Co.,* supra; *Abbott v. Portland Trust & Savings Bank,* 160 Or. 699, 86 P. (2d) 962; *McKay v. St. Ind. Acc. Com.,* 161 Or. 191, 87 P. (2d) 202; *Horn v. National Hospital Assn.,* supra; *Seater v. Penn Mut. Life Ins. Co., Post* P. 542, 156 P. (2d) 386; *Erickson v. Pacific States Lbr. Co.,* 18 F. (2d) 513.

Our conclusion obviates the necessity for consideration of the question of whether or not the evidence indicated that respondent was guilty of having failed to observe the requirements of the Employers' Liability Act.

The judgment is affirmed.