Argued October 31, 1963, affirmed February 13, petition for
rehearing denied April 15, 1964

## SKEETERS *v.* SKEETERS ET AL

389 P. 2d 313
391 P. 2d 386

*William C. Martin,* Portland, argued the cause for appellants. With him on the brief were Dusenbery,

Martin, Beatty & Parks and Verne Dusenbery, Portland.

*Gene L. Brown,* Grants Pass, argued the cause for respondent. With him on the brief was R. Gene Smith, Grants Pass.

Before ROSSMAN, Presiding Justice, and PERRY, SLOAN, O'CONNELL, GOODWIN, DENECKE and LUSK, Justices.

ROSSMAN, J.

This is an appeal by the defendants, Charles Skeeters and Richard O. Skeeters, who are partners, from a judgment of the circuit court which is based upon a jury's verdict. The plaintiff is the brother of one of the defendants and the uncle of the other. The plaintiff sustained the injuries, upon which this case is based, while working in the employ of the defendants on a piece of road building equipment known as a rock crusher. The challenged judgment awarded him general damages in the amount of $81,000 and special damages totaling $15,580.

The complaint alleged that the defendants failed to observe the demands of (a) due care, (b) the Oregon Employers' Liability Law (ORS 654.305), and (c) the Basic Safety Code, Part 1, Chapter III, Sections 3.1, 3.2, 3.3, and 3.5 (promulgated by the State Industrial Accident Commission pursuant to ORS 654.005 to 654.100). Specifically, the complaint charged the defendants failed to (1) equip the rock crusher with adequate guards and baffles to prevent rocks from coming into contact with moving belts and the power drive of the machine; (2) equip the rock crusher with guards in accordance with the Basic Safety Code; and (3) use every device and precaution

which it was practicable to use without impairing the efficiency of the machine as demanded by the Employers' Liability Law.

The answer denied all charges of negligence. It alleged that plaintiff was in charge of the rock crusher with a resulting duty to install safety devices and that his injuries were due to his failure to wear a "hard hat" which was provided for his use. Defendants alleged as a separate affirmative defense that plaintiff had executed a writing releasing them from liability. Appellants (defendants) moved for a directed verdict and for judgment notwithstanding the verdict; both motions were denied.

Defendants (appellants) were engaged in logging operations under the partnership name of Skeeters and Skeeters. Their operation included the building of logging roads near Medford. In the road building operation they employed the rock crusher which we have mentioned to break large quarry rock into smaller pieces suitable for spreading on the roads they were building. The large quarry rock, about nine to ten inches in diameter, was dumped into one end of the machine where it was forced through rollers and a "jaw crusher" mechanism which broke it into small size. The crushed rock was moved over a "shaker screen" which separated the pieces of the desired size from those which had to be returned to the "jaw crusher" for further processing. The rocks of the desired size passed through the shaker screen and were dumped on the ground at the other end of the crusher to be loaded into trucks.

On the outside of the machine there were large flywheels which were rotated by belts that passed around drive wheels also located on the outside of the machine. At the time of the accident precipitating

this cause of action there were no guards around the belts or flywheels.

Plaintiff's testimony and that of two other employees of the defendants who worked near the rock crusher reveal that rocks occasionally bounced out of the rock crusher and struck the rotating belts and flywheels. The plaintiff testified:

"A Yes, I've seen lots of rock jump off the screen and go over the sides.

"Q When they went over the side could you see where they went?

"A Yes. They went right down through—well, on several occasions it knocked a set of belts off.

"Q And when they went into the belts what happened to the rock?

"A I don't know. They went so fast you didn't know.

\*　　　　\*　　　　\*

"A Yes. They get to jumping on the screen and they go over the sides.

"Q And when they went over the sides they would go down into the belts? Is that what you said?

"A Yes, the belts and flywheels.

"Q And then they would fly out?

"A That's right."

Orval Langhoff, a mechanic for the defendants, when asked the purpose of a baffle which had been built to be installed over the shaker screen, responded in this manner:

"Q And what was its purpose?

"A Well, sometimes when the screen runs a little bit empty with larger rock, why, the larger rocks will bounce and get into the belt."

Warren Barr, the shovel operator, testified:

"Q State if at any time during your observation, did you ever notice or observe any rocks jumping off of the shaker screen on the crusher?

"A Well, at times I have noticed some of them falling off the shaker screen, but I never seen them actually fly from where I was at. I was usually working on the back end of it."

At about 8:30 on the morning of October 28, 1959, the date of plaintiff's injury, he was standing on a "catwalk" located on the crusher. The "catwalk" was attached near the top of the machine approximately ten feet from the ground and slightly above the shaker screen. Plaintiff was bending over removing mud and roots from some of the belts when he was struck on the head with great force by some object. There were no eyewitnesses to the accident and no direct evidence as to what the object was or from whence it came. However, the defendants submitted for introduction into evidence the claim report which they made to the Northern Life Insurance Company, their insurance carrier, and which states that the plaintiff received his injury by being struck in the head by a rock. The report was received in evidence. When the trial judge denied the defendants' motions for a new trial and the entry of judgment for the defendants notwithstanding the verdict, he did so by a memo opinion which referred in the following manner to the defendants' report to its insurance carrier:

"* * * an initial claim report which was made to the Northern Life Insurance Company received as defendants' exhibit 'C', was prepared shortly after the accident, and states that the injury was received by a rock striking right side of skull and it is apparent that defendants were satisfied with this explanation of the accident as

their bookkeeper filled in the employer's side of the exhibit indicating thereon that plaintiff was injured in the regular course of his employment and that the validity of the claim was not questioned."

Thus, the report containing an entry that the plaintiff received his injury by being struck on the right side of his skull by a rock was given by the defendants to their insurance carrier. Upon the offer of the defendants it was received in evidence.

Plaintiff was taken unconscious to a hospital where he underwent emergency operations for three hours. His injury was diagnosed as a compound, comminuted, depressed skull fracture of the right frontal area with brain damage. A metal plate was subsequently put into plaintiff's head to repair the hole in his skull. The attending physician testified the injuries could have been caused by a rock thrown with great force against the plaintiff's head. The plaintiff alleges that as a result of his injury he has continual headaches, impairment of his eyesight, partial paralysis of his right side, is subject to epileptic convulsions and dizzyness, and is unable to return to work.

The plaintiff was released from the hospital on November 10, 1959, after 13 days of confinement. The next day, November 11, he was interviewed by two agents of Northern Life Insurance Company, aforementioned, which had issued an insurance policy to the defendants covering their employees. The agents asked plaintiff several questions concerning the accident, and one of them made some entries upon a form. The plaintiff signed the form in two places. The form also contains entries made by the defendants together with the signature of their firm. This

document, introduced in evidence by defendants, is the one to which we have referred and which is entitled "Initial Claim Report"; it contains near the bottom a clause denominated "Election to Receive Insurance Benefits." In substance the defendants allege that by signing the latter clause the plaintiff elected to receive the benefits of the policy in lieu of all other claims against his employers for the injuries. Plaintiff received and cashed three checks totaling $1,020; all other payments tendered by the insurance company were rejected by him.

The defendants present fifteen assignments of error. Many of them raise the same issue. Consequently, we will concern ourselves with the issues raised without necessarily quoting the assignment of error or pursuing the numerical order designated by the appellants (defendants).

The defendants contend in their first assignment of error that the trial court erred in denying their motion for a directed verdict (see Appendix B, Illustrations 2 and 3, Rules of the Supreme Court). They urge essentially three grounds in support of their motion. First, that there was insufficient evidence to sustain the allegations of negligence on the part of defendants. Specifically, the defendants argue that a lack of evidence as to what actually struck the plaintiff or from where the object came, required the jury to engage in speculation and conjecture in arriving at their verdict. Secondly, that the plaintiff was a vice principal as a matter of law and that as a vice principal he was in charge of the rock crusher and responsible for installation of any safety device. They urge as a third ground that plaintiff's own recklessness in failing to wear a hard hat which was provided for him was the cause of his injuries.

■ In assessing the trial court's disposition of these motions, it is our duty to view the evidence in the light most favorable to the plaintiff, who opposes the motions. *Hayes v. Killinger,* 235 Or 465, 385 P2d 747.

■ It is not sufficient for the plaintiff to show that the negligence of the defendants might have caused his injuries if the evidence indicates with equal probability that they were due to some other cause. It was incumbent upon plaintiff to show that of the various possibilities the theory imposing liability on defendants was the most probable; to require less would permit the jury to speculate. *Lippold v. Kidd,* 126 Or 160, 269 P 210; *Spain v. O. W. R. & N. Co.,* 78 Or 355, 153 P 470; *Annereau v. Ewauna Box Co.,* 176 Or 509, 159 P2d 215.

■ However, while the jury cannot be permitted to speculate, the jurors can be allowed to draw reasonable inferences from the evidence submitted by the litigants. Certainly, a function of the jury is to apply the ordinary experience of mankind to the disputed facts and arrive at the conclusion their reasoning dictates. It is difficult to define precisely the boundary line between conjecture and fact reasoning. But if the evidence makes a selection from the various possibilities and singles out in such a way as to display a causal relationship between the wrongful act of the defendants and the injury sustained by plaintiff, the conclusion is grounded in the proof and is not mere conjecture.

The essence of the evidence was that plaintiff was standing on a catwalk of the rock crusher which was in operation. There was no other machinery operating in the immediate area. He was struck on the head by some object with force sufficient to penetrate his skull. Rocks had been seen in the past flying out

of the rock crusher and propelled into the air after striking the unguarded belts and flywheels located on the outside of the machine. Plaintiff's theory of the case is that a rock bounced out of the machine and struck the rotating belts or flywheels from where it was thrown against his head. It will be recalled that the defendants, themselves, submitted to their insurance company a report which stated that the plaintiff's injury was caused by a rock which struck him in his head; and it will also be recalled that this report was received in evidence upon the defendant's offer. As mentioned above, plaintiff has the burden to remove the cause from the realm of speculation and give it a basis in the proffered facts; we believe the proof has accomplished this result.

The question yet remains whether defendants violated a duty to plaintiff in failing to install suitable guards over the belts and flywheels. Plaintiff asserts this duty is imposed not only by the common law but also by the Employers' Liability Law[1] and the Basic Safety Code.[2]

The Employers' Liability Law exacts a higher degree of care from employers than does the common law. It requires measures for the safety of employees that are more stringent than the common law and at the same time deprives employers of some defenses available at common law. For example, in actions based upon the statute, the negligence of a fellow employee is not available as a defense (ORS 654.330), and though contributory negligence mitigates damages, it does not bar recovery (ORS 654.335). It follows in this case that if recovery cannot be had

---

[1] ORS 654.305, 654.310 (4).
[2] Promulgated by State Industrial Accident Commission pursuant to ORS 654.005 to 654.100.

under the Employers' Liability Law it is not available under the common law rules of due care. *Shelton v. Paris,* 199 Or 365, 261 P2d 856; *Hoffman v. Broadway Hazelwood,* 139 Or 519, 10 P2d 349, 11 P2d 814; *Fromme v. Lang & Co.,* 131 Or 501, 281 P 120.

Plaintiff alleges in paragraph V of his second amended complaint that the defendants were negligent "(4) In failing to use every device, care and precaution which it was practicable to use without impairing the efficiency of the operation of the rock crusher, for the protection and safety of life and limb." This allegation, phrased in the words of the Employers' Liability Law, when read in conjunction with the remainder of the complaint, charges defendants with failure to install guards and protective baffles over the belts and flywheels of the rock crusher.

In order to recover under this section of the Employers' Liability Law (ORS 654.305) the plaintiff was required to show that the work in which he was engaged involved risk or danger to the employees or the public. *Fitzgerald v. Ore. Wash. R. & N.W. Co.,* 141 Or 1, 16 P2d 27; *Union Oil Co. of Calif. v. Hunt,* 111 F2d 269; *Barker v. Portland Traction Co.,* 180 Or 586, 178 P2d 706. It has been held in numerous cases in this state that whether an activity in which an employee is engaged involves risk or danger is a question of fact to be determined by the jury. *Yovovich v. Fall City Lumber Co.,* 76 Or 585, 149 P 941; *Wheeler v. Nehalem Timber Co.,* 79 Or 506, 155 P 1188; *Poullas v. Grove,* 84 Or 106, 164 P 562; *Rorvick v. North Pacific Lumber Co.,* 99 Or 58, 190 P 331, 195 P 163; *Bottig v. Polsky,* 101 Or 530, 201 P 188; *Jodoin v. Lukenbach S.S. Co.,* 125 Or 634, 268 P 51; *Coomer v. Supply Inv. Co.,* 128 Or 224, 274 P 302;

*Freeman v. Wentworth & Irwin,* 139 Or 1, 7 P2d 796; *Ferretti v. Southern Pac. Co.,* 154 Or 97, 57 P2d 1280; *Williams v. Clemen's Forest Products,* 188 Or 572, 216 P2d 241, 217 P2d 252.

■ This issue was properly submitted by the trial court under lucid and comprehensive instructions, and we believe there is substantial evidence to sustain a conclusion that a machine of this character involved the requisite risk and danger.

To sustain the allegations of negligence under the Employers' Liability Law the plaintiff was required to show by evidence (a) that failure to have installed the guards was the proximate cause of his injury and (b) that the installation of the protective devices could have been accomplished without impairing the efficiency of the machine. Both of these were questions of fact and again we are faced only with determining whether there was sufficient evidence to sustain the jury's finding for the plaintiff. *Ludwig v. Zidell,* 167 Or 488, 118 P2d 1073.

■ As the trial judge properly instructed the jury, a violation of the Employers' Liability Law is negligence per se. However, it is not any random violation of the statutory duty which will make the employer liable, but violation by inadequate performance of a duty which, if properly performed, would have prevented the injury. The plaintiff complained that defendants' failure to have installed baffles and guards over the belts and flywheels allowed a rock to fly up and strike him causing him injury. This allegation, if proven, traces a causal relationship in proximity to plaintiff's injury sufficient to satisfy the requirements of the Employers' Liability Law. As we held above, there is sufficient evidence to sustain

plaintiff's theory of liability without requiring the jury to resort to mere speculation. It follows the jury could properly find the failure of defendants to have installed the baffles and guards was a violation of the statute and the proximate cause of the injury to the plaintiff.

Plaintiff introduced testimony to show guards were installed by orders of defendant Charles Skeeters after the accident. The testimony also indicates that the efficiency of the machine was not impaired by the installations. It was competent to show the subsequent installation of the protective devices for the purpose of demonstrating the practicability of guarding the rock crusher's moving parts without affecting its operational efficiency. The reasoning is very well expressed by Mr. Justice McBride in *Love v. Chambers Lumber Co.,* 64 Or 129, 135, 129 P 492:

> "No better evidence could have been introduced for this purpose than to show that after the accident the machinery had been so guarded, and that such safeguards had not in any way impeded or interfered with its operation."

See also *Franklin v. Webber,* 93 Or 151, 182 P 819; *Foster v. University Lumber Co.,* 65 Or 46, 131 P 736; *Malloy v. Marshall-Wells Hardware Co.,* 90 Or 303, 173 P 267, 175 P 659, 176 P 589.

In conjunction with the issues under the Employers' Liability Law the defendants-appellants assigned as error the denial of their motions "to strike or in the alternative to make more definite and certain * * * subparagraph (4) of Paragraph V of the Second Amended Complaint." The averment of the second amended complaint thus mentioned is a general allegation in virtually the precise language of the

"and generally" clause of the statute. Paragraph V of the Second Amended Complaint reads:

"That the defendants and each of them were careless and negligent in the following particulars:

"(1) In failing to equip said rock crusher with adequate guards or baffles to prevent rocks, being processed in said crusher from coming into contact with moving belts and power drive of said crusher and being thrown or ejected from said crusher.

"(2) In using said rock crusher which was not guarded and equipped in accordance with the provisions of the Basic Safety Code of the State of Oregon * * *.' "

The only device which the plaintiff claimed, during the presentation of the evidence, should have been added to the rock crusher in order to render its operation more safe was a guard or baffle for the belts and flywheels. His contention that such would have made the machine safer was alleged in subparagraph (1) of Paragraph V of the complaint above quoted. The motion should have been sustained. However, if a pleading, when read in its entirety, apprises the adversary of what he must meet and enables the trial court to rule advisedly during the progress of the trial, we will not deny the parties' right to a trial on the merits simply because the complaint could have been phrased in better language. *Ross v. Robinson,* 174 Or 25, 147 P2d 204; *Parker v. Faust,* 222 Or 526, 353 P2d 550; *Perkins v. Standard Oil Co.,* 235 Or 7, 383 P2d 107. Although, as we have said, the motion to make more definite and certain should have been sustained, yet subparagraph (1) of Paragraph V of the complaint specified the very violation of the Employers' Liability Act which the plaintiff said the defendants violated. Therefore, this contention reveals no basis for reversal.

By reviewing the complaint in its entirety it is seen that it informed defendants with reasonable accuracy that they were charged with failure to install guards or baffles over the belts and flywheels of the machine and that this constituted a violation of their statutory duty. Although we are not informed specifically what device was necessary and practicable, we feel this was a matter of proof and not a failure to plead.

The defendants urge in further support of their motion for a directed verdict that (1) the plaintiff was a vice principal as a matter of law and (2) he was in charge of the rock crusher and therefore was responsible for any lack of protective devices. Whether an employee is a vice principal in charge of a particular machine is peculiarly a question of fact. *Swayne & Hoyt v. Barsch,* 226 F 581; *Isaacson v. Beaver Logging Co.,* 73 Or 28, 143 P 938; *Howard v. Foster & Kleiser Co.,* 217 Or 56, 332 P2d 621, 342 P2d 780; and *Bartley v. Doherty,* 225 Or 15 at 27, 351 P2d 71, 357 P2d 521. Accordingly, the trial judge submitted the issues to the jury under comprehensive instructions.

The defendants, however, challenge the findings (verdict) in two respects: (1) the evidence is sufficient to show that the plaintiff was in charge of the rock crusher, and (2) the trial judge erred in instructing the jury it could consider whether plaintiff had authority to hire and fire in determining if he was a vice principal.

We pointed out in *Schmidt v. Multnomah Operating Co.,* 155 Or 53, 61 P2d 95, that the Employers' Liability Law imposed the duties created by it not only upon the owners and contractors but also upon all vice principals. If a man is charged with the duty

to see that the statutory requirements are carried out, he cannot complain if his injuries result from his failure to have obeyed the statute. See also *Howard v. Foster & Kleiser Co.*, 217 Or 516, 332 P2d 621; *Galer v. Weyerhaeuser Timber Co.*, 218 Or 152, 344 P2d 544.

ORS 654.315 states:

"The owners, contractors, subcontractors, foremen, architects or other persons having charge of the particular work, shall see that the requirements of ORS 654.305 to 654.335 are complied with."

The idea of supervision and control pervades the entire clause. In this case the record contains no evidence showing that the plaintiff had authority to supervise or control or that he was vested with discretion as to how things should be done. He did not give orders but received them; it was his duty to obey, not to command. The plaintiff was originally hired by the defendants as a "powder monkey" to dynamite the rock in the quarry. He also assisted in operating a bulldozer and in the repair of machinery; in essence, the evidence indicates he was a general utility man. On the occasion of his injury he was assigned to operate the rock crusher, including assistance with repairs that were needed. He could turn the machine off and on incidental to the operating schedule set by defendants. He had no authority to determine the size of the rock produced by the machine; no authority to determine its location; and no authority to direct the work of other employees.

The defendants cite *Howard v. Foster & Kleiser Co.*, 217 Or 516, 332 P2d 621, 342 P2d 780, in support of their contention. In that case we held that the plaintiff who had charge of the inspection and serv-

icing of billboards, including the authority to choose between two ladders, both of which were readily available to him, and the duty to inspect his equipment, could not hold his employer liable when a ladder which he failed to inspect broke causing his injury. We found the plaintiff had considerable discretion in selecting the order in which the billboards on his route would be serviced, considerable control over expense money for himself and his helper, a duty to inspect the billboards and his equipment, authority to order the use of alternative equipment, discretion and authority in directing the work of his helper, a duty to repair or report any defects he found, and a duty to keep the time of himself and his helper. The authority and discretion given plaintiff in *Howard v. Foster & Kleiser Co.*, supra, led this court to the conclusion he was a foreman and a vice principal. We cannot infer from the limited authority and duties assigned to the plaintiff in the case at bar that he was a foreman or was in charge of the rock crusher with authority to initiate the installation of guards and baffles.

Whether the plaintiff had authority to hire and fire employees of the defendant is relevant in determining whether he was a vice principal. In this case where there is no direct evidence of the employee's authority to install safety devices, the existence or non-existence of the authority must be inferred from the circumstances of his employment. If an employee has the right to hire and fire other employees, that may be a circumstance indicative of his status as a person in charge. Admittedly, the question of liability under ORS 654.315 cannot be resolved from this factor alone; but whether or not this power exists in conjunction with other authority, powers of discretion,

and duties is relevant. See *Schmidt v. Multnomah Operating Co.*, 155 Or 53, 61 P2d 95; *Howard v. Foster & Kleiser Co.*, 217 Or 516, 332 P2d 780; *Shields v. W. R. Grace & Co.*, 91 Or 187, 179 P 265. The trial judge, with commendable clarity, delineated the criteria which the jury was to use in determining the plaintiff's status; he placed no undue emphasis on any one criterion.

In their second assignment of error the appellants-defendants claim the circuit court erred in withholding from the jury the affirmative defense that the plaintiff, as an alleged vice principal, violated Section 6.24 of the Basic Safety Code. The latter states that employers shall provide, under the circumstances mentioned in the section, hard hats for their employees and that the latter shall wear them. The answer, in addition to quoting Section 6.24, alleged that the plaintiff was the vice principal in charge of the rock crusher and that he was not wearing a hard hat at the time of his injury. The averment was stricken upon the plaintiff's motion and thereupon the defendants saved an exception "for the reason that it is alleged in this case that the plaintiff is the person in charge of the rock crusher which he was operating and therefore it is his statutory duty to see that the place is made safe and that the Employers' Liability Act and the safety code are complied with." The defendants contended that it was the plaintiff's duty, as an alleged vice principal to have obeyed the safety code and to have worn a hard hat. They further contend that his alleged failure to have done so constituted a violation of the code which made him liable for his own injuries.

As the defendants urge, a vice principal has the same duty as a principal in providing a safe place to

work and if his injuries result from his inattention to that duty he cannot hold his employer liable. See *Davis v. Angell*, 218 Or 443, 449, 345 P2d 405. This defense of the defendants should have been submitted to the jury; consequently it was error for the trial judge to strike it from the answer. The merits of the defendants' theory, as we observed from their exception, is dependent upon a finding that plaintiff was "in charge of the rock crusher." The instructions to the jury submitted the defense that the plaintiff was in charge of the work, that is, the foreman. For example, the instructions stated:

> "I instruct you that defendants, in their fifth affirmative and separate answer and defense, have charged the plaintiff was in charge of the work * * * and is therefore not entitled to recover from the defendants any damages because of his injury * * *. In determining whether the defendants have sustained this burden of proof, you should consider the following factors: 1, the nature of the operation of the defendants; 2, the relationship of the plaintiff and defendants; 3, whether plaintiff owed defendants any duty to inspect the crusher * * *. If you find the plaintiff was in charge of the particular work and operation in which he was engaged at the time of the accident alleged in his complaint, then, it would be his duty to see that every care, device and precaution was used that was practicable. * * *"

Thus the defense upon which defendants depended, that is, that the plaintiff was a vice principal, was submitted to the jury as a general defense to plaintiff's complaint, and as we have determined above, the evidence was such that the jury must necessarily have found plaintiff was not a vice principal, consequently the defendants were not prejudiced by the trial court's withdrawal of this affirmative defense.

We feel for additional reasons this defense would have availed defendants nothing. The elements necessary to this affirmative defense are (1) that the plaintiff was a vice principal charged with obedience to the Basic Safety Code, and (2) that his violation of this code (i.e. failure to provide himself with a hard hat and to wear it) was the proximate cause of his injury. A finding adverse to the defendants on either of these elements is sufficient to defeat the defense.

If the jury determined defendants were liable under the Employers' Liability Law they must have necessarily found the plaintiff was not a vice principal. On the other hand, if liability was predicated by the jury on common law grounds, they must of necessity have found the plaintiff was free from contributory negligence. Under the court's instructions and the defendants' answer[9] a finding that there was no contributory negligence on plaintiff's part by implication includes a finding that his injuries were not proximately caused by his failure to wear a hard hat. Consequently whichever grounds of negligence the jury used in finding defendants liable, one or the other of the elements of the first affirmative defense which is the subject of the second assignment of error was determined adversely to defendants.

The answer of the defendants charged the plaintiff with contributory negligence in the following particular: "In failing to wear a hard hat which was pro-

---

[9] The portion of defendants' first affirmative defense, which was not stricken, states: "That at the time and place plaintiff alleges he was injured, the proximate cause of any injuries sustained by plaintiff was his own carelessness, recklessness and negligence in the following particulars:

"(1) In failing to wear a hard hat which was provided for his use; * * *."

vided for his use." The instructions submitted that defense to the jury under the provisions of the Employers' Liability Law and also under the doctrine of contributory negligence. These instructions did not make his duty to wear a hard hat dependent upon his being a foreman. For example, the instructions told the jury:

"I instruct you that contributory negligence, as I will later explain that term to you, will not defeat a recovery altogether under the Employers' Liability Law, but the plaintiff's contributory negligence, if any, must, if you find the Employers' Liability Law to be applicable, be taken into consideration by you in diminishing the damages in proportion to the amount of negligence, if any, attributable to the above * * *."

Then the instructions went into the subject of common law negligence. They declared that a violation of the Basic Safety Code under the rule of common law negligence "is negligence per se or, in other words, negligence in and of itself." Then they continued by declaring:

"In order for defendants to prevail upon this plea they must establish by a preponderance of the evidence some one or more of the acts set out in the amended answer and also establish by a preponderance of the evidence that such act, if any, was a contributing proximate cause of the accident and without which the accident would not have occurred. Contributory negligence consists of such acts or omissions on the part of the plaintiff as amount to a want or lack of ordinary care, which contributes to the happening or causing the accident complained of. If you find that the Employers' Liability Act is not applicable, and if you further find from a preponderance of the evidence that the plaintiff was guilty of contributory negli-

gence, even though defendants might also be guilty, then there can be no recovery by plaintiff."

After those instructions had been given, defendants' counsel voiced no objection to the instructions upon the subjects of vice principal, hard hat, and contributory negligence. Nor did he save any exception to those instructions.

Appellants' (defendants') sixth and seventh assignments of error claim the trial court erred in submitting the requirements of the Basic Safety Code to the jury. The defendants advance the argument that the code provisions relating to guards is designed to prevent employees from coming into contact with the operating machinery and not to protect them from being hit by objects thrown from the machine. The Basic Safety Codes are promulgated by the State Industrial Accident Commission pursuant to ORS 654.005 to 654.100 and have the effect of law. Rule 3.2, being the one which the parties regard as material to the issue presented by these two assignments of error, reads:

> "Positive guarding of all hazardous machines or equipment by means of standard and approved methods shall be provided and the following characteristics will be used in determining the approval and effectiveness of guard construction, design and use; a properly designed guard should:
>
> "(1) Provide positive protection.
>
> "(2) Prevent all access to the danger zone during operation.
>
> \* \* \*
>
> "(5) Be designed for the job and machine."

Rule 1.4, which is set forth in italics, reads as follows: " All specifications in this Code are minimum. \* \* \*"

The defendants argue that the sole purpose of the guards which Rule 3.2 requires employers to place upon hazardous machines is to prevent employees from coming into contact with moving parts. In support of their contention they cite subparagraph (2) above quoted. Very likely, the purpose suggested by the defendants is one of those the guards are intended to serve, but the danger to an employee from coming into contact with a moving part is not the only danger which the rock crusher created. Being struck by a flying rock was another vital danger.

We believe that Rule 3.2 is intended to complement and make more specific the demands of the common law that the employer shall furnish a safe place of employment for his workers. The first words of the paragraph are "Positive guarding of all hazardous machines * * * shall be provided * * *." Subdivision (1) of Rule 3.2 provides that the guard installed shall be designed to "provide positive protection" for the employee; and subdivision (5) demands that the guard shall "be designed for the job and machine." The expressed demands, as we have seen from Rule 1.4, "are minimum."

■ Since the purpose of Rule 3.2 is to render more specific the demands of a safe place to work, we believe that one of the purposes of requiring the installation of guards upon hazardous machines is to provide protection from all dangers that are reasonably foreseeable. In the instance of this case, the rule meant that the installed guard should provide protection from flying rocks. The evidence indicates that protection of that kind was feasible and practical.

Defendants moved, before commencement of the trial, to strike from the complaint an allegation that defendants were negligent in using the rock crusher

when approval of the safety requirements concerning it had not been obtained from the State Industrial Accident Commission pursuant to ORS 654.047. This motion was denied at that time but was granted at the close of the trial. Plaintiff introduced the testimony of Mr. Peek, a representative of the Industrial Accident Commission, in support of the allegation. He testified that according to his knowledge the commission had not inspected defendants' rock crusher. The entire testimony of Mr. Peek was stricken from the record and the jury was instructed to disregard it and the complaint's allegations. We must assume that the jury abided by the judge's instructions and that the defendants were not prejudiced by any statements of Mr. Peek that may have lingered in their minds.

The eighth assignment of error advanced by the defendants challenges a ruling which submitted to the jury plaintiff's allegation that he had "partial paralysis and loss of use of his right arm, shoulder, and hand." The only evidence in the record concerning this allegation is the testimony of the plaintiff. He stated that since the accident his arm hurts "to the bone" and his hand goes to sleep or gets numb. No objection was made to that testimony when it was given. Defendants assert in their brief that there is insufficient medical evidence that the injury to the arm, hand and shoulder bears any relation to the plaintiff's head injury. This is a new ground which is advanced for the first time on appeal. It is a principle often stated in this jurisdiction that when a motion is advanced the grounds there stated in support of it are conclusive on the litigant and he may not urge additional grounds on appeal. *Whitehead v. Montgomery Ward and Co.*, 194 Or 106, 239 P2d 226;

*Suko v. Northwestern Ice Co.,* 166 Or 557, 113 P2d 209; *Bramwell v. Rowland,* 123 Or 33, 261 P 57; *Edvalson v. Swick,* 190 Or 473, 227 P2d 183; *Pokorny v. Williams,* 199 Or 17, 260 P2d 490; *Garrett v. Eugene Medical Center,* 190 Or 117, 224 P2d 563. An objection or a motion which does not call to the attention of the trial judge a purported defect which the appellant later makes the subject of an attack on appeal affords the trial judge no opportunity to rule on this ground. Further, it affords the proponent of the evidence no opportunity to meet the objection, if a means is then available. If appellant had something additional in mind when he voiced his objection, it cannot be considered on appeal because it was not called to the attention of the trial judge.

We must determine what grounds were urged for this motion at the trial. Defendants asked that the allegations in question be removed from the complaint "for the reason that there is no medical testimony in the case that there is any partial paralysis or loss of use of the right shoulder, arm, and hand or any one of them." It is seen that the voiced objection was that medical testimony was needed to establish the disability—the objection was not that medical testimony was needed to show that the disability in the arm resulted from the skull fracture. The foregoing is the only ground urged for the motion and designates the question on appeal to be whether it was necessary, before the plaintiff could testify as to his disabilities and pain, for him to present medical testimony to prove that he suffered partial paralysis and loss of use of his right arm, hand, and shoulder.

Medical testimony is necessary when the question of injury requires a special skill or knowledge to establish that it actually exists. Conversely, if the

common experience of ordinary men is sufficient to resolve the issue from stated facts, the jury can be allowed to receive the issue on the basis of lay testimony. The question of partial paralysis of plaintiff's arm, shoulder, and hand is an uncomplicated one. He testified to the elements that make up a claim of partial paralysis and loss of use. In *Frangos v. Edmunds,* 179 Or 577, 173 P2d 596, we sustained the plaintiff's statement on the witness stand that after the accident he suffered pain in his eye with impairment of its use and that he had no control over the muscles in that area; he concluded, "you know, well, it is paralyzed." We noted in that case that Webster defines paralysis in medical terminology as "abolition of function, whether complete or partial; esp. the loss of the power of voluntary motion, or of sensation, in any part of the body."

Plaintiff in *Yarbrough v. Carlson,* 102 Or 422, 202 P 739, testified that after an automobile accident she had pains in her back and abdomen, that she passed blood from her intestines every day, and had pains in her stomach which resulted in high fever. We held this evidence of the extent of her injuries was "amply sufficient to take the case to the jury."

The challenged ruling was not erroneous.

Appellants' (defendants') ninth, tenth, and eleventh assignments of error relate to asserted errors which the defendants say the trial court committed when it denied motions for a mistrial. These motions challenged questions asked by counsel for plaintiff of two prospective jurors during voir dire and to testimony elicited from one of plaintiff's witnesses. In all three motions the defendants asserted the plaintiff had unnecessarily interjected evidence of defendants' insurance coverage.

Plaintiff's counsel asked juror number one:

"Q Have you read advertisements or articles that have recently appeared in the last few months in magazines and newspapers about the effect of large judgments and losses upon insurance companies, and premium rates?"

He inquired of juror number seven:

"Q Do you feel that an insurance representative, in dealing with the party who is injured, should be honest and tell the truth in their dealings?"

The third basis of defendants' motion was in an answer that was given by Mr. Crawford Peek, the representative of the State Industrial Accident Commission whom we have mentioned. We are not aware of any part of the record which discloses the purpose of plaintiff's counsel in asking Mr. Peek the question which brought forth his challenged answer unless counsel's purpose was to show that the defendants' rock crusher had not been inspected by the Industrial Accident Commission. We assume that such was his purpose. Mr. Peek testified that the commission treated firms that had coverage with private insurance companies differently from firms that took coverage under the Workmen's Compensation Act. That answer of his is the subject matter of the aforementioned eleventh assignment of error.

The fact that the defendants had a policy of insurance which was applicable to the issues of this case was revealed by the defendants' answer. It stated:

"* * * prior to said injuries and at the time the plaintiff was first employed by the defendants, defendants did obtain an accident insurance policy insuring the plaintiff against certain acci-

dental injuries which insurance policy provided for \* \* \*."

The answer, after alleging that on October 27, 1959, the plaintiff suffered injuries, averred that on November 11, 1959:

"\* \* \* the plaintiff made, executed and delivered to the defendants a certain election to receive insurance benefits in the following words and figures, to-wit \* \* \*."

Thus, insurance was destined to play an important part in the case. Its first mention was made by the defendants.

■ The entire testimony of Mr. Peek was stricken from the record and the jury was instructed to disregard it. We must assume that the jury acted under these instructions and disregarded the stricken testimony. We must likewise disregard his testimony in determining error. The issue was originally for the trial judge. He evidently felt satisfied that the action which he took sufficed to prevent the defendants from being subjected to prejudice. We are aware of nothing that shows that in so ruling he abused judicial discretion.

The issue concerning prejudice is preserved by counsel's above questions that were asked of the two jurors.

■ *Guthrie v. Muller*, 213 Or 436, 325 P2d 883, held that the trial court could assess the evidence and determine "the probable effect upon the amount of the verdict resulting from the injection of insurance into the record." When the issue is raised on appeal our function is to determine whether the trial judge abused his discretion in denying the motion for a

mistrial. *Strandholm v. General Constr. Co.,* 235 Or 145, 382 P2d 843.

 It is not proper for an attorney to place before the jury for prejudicial purposes the fact that the defendant is protected by insurance, and it is equally improper to accomplish this purpose by indirect reference to insurance coverage. Counsel's questions to the jurors intimated the defendants were insured. The granting of a mistrial on this ground is not to punish counsel for having asked an improper question but to insure the defendant an unprejudiced determination of his liability. The impropriety is not in the fact the questions were posed to the jurors but is in the circumstance the jury is apprised of the defendants' insurance coverage. If the fact of insurance is brought to the attention of the jury by relevant and material evidence, their deliberations are not prejudiced by an indirect reference. In the present case the defendants' insurance, as we have seen, was set forth in the answer. Still later, the defendants themselves, by calling to the witness stand two representatives of their insurance carrier, described the insurance policy, produced the latter, and themselves introduced the policy into evidence. As an exhibit it was sent to the jury room with the jurors when the latter retired to reach a verdict.

Two types of insurance possibly are important to an employer in a situation of this kind. One is an accident policy which, as we have said, was produced and became an exhibit. The other, which may have been consequential to the employer, was a policy of liability insurance. A policy of that kind was not relevant to any issue in this case, and no such policy was produced. It may be, however, that counsel for the plaintiff had insurance of that kind in mind when

he asked the two challenged questions on voir dire. We do not believe that the jurors would perceive, upon questions submitted to them on voir dire, the distinction between the two kinds of insurance. Therefore, if we assume that plaintiff's counsel had liability insurance in mind when he asked the two questions upon voir dire examination, we do not believe that the trial judge abused his discretion when he made his challenged ruling. However, we add that if the trial judge had ordered a mistrial, his ruling would have been sustained.

It will be recalled that a question which was put to a prospective juror was: "Do you feel that an insurance representative, in dealing with the party who is insured, should be honest and tell the truth in their dealings?" This question appears to lie somewhat in the province of the frivolous queries. It was objectionable. If the trial judge had granted a mistrial on account of it, we would uphold the ruling; but in his discretion he overruled the motion. We sustain the ruling.

Defendants pleaded a document bearing the plaintiff's signature which they alleged was a release. When he signed it, according to the defendants, he released them from liability and elected to receive the benefits mentioned in an insurance policy which the Northern Life Insurance Company had issued. In their efforts to establish this defense the defendants offered in evidence the "release" and the insurance policy which was an accident policy. The "release" together with its heading reads as follows:

### "ELECTION TO RECEIVE INSURANCE BENEFITS

"Since my employer is now carrying an accident insurance policy covering certain accidental

injuries with the benefits payable to them under a plan whereby after such an injury (or injuries) I should have the right to elect to either accept an assignment to me, by my employer, of the insurance benefits in full settlement of any claim for damages I might have against my employer or to attempt to hold the employer liable in damages for such injuries, in which case the insurance benefits were to go to the employer;

"Now since I suffered accidental injuries on or about the __27__ day of __Oct__ , __1959__ , I hereby elect to accept an assignment to me, by my employer, of the insurance benefits provided for in the accident insurance policy in full settlement of any claim for damages I might have against the employer on account of such injuries and I hereby direct the accident insurance company to make all accident benefit payments on account of such injuries direct to me."

It will be noted that the "release" does not bear the title "Release" or "Satisfaction," but is captioned "Election to Receive Insurance Benefits." The caption does not denote that by signing the paper the individual was surrendering any rights.

Assignments of error twelve and thirteen claim that error was committed when the "release" was not given effect by the court. Defendants pleaded the "release" as a separate affirmative defense. The plaintiff's reply alleged that (1) the "release" was obtained when the plaintiff was mentally enfeebled, (2) when he signed the release he was incapable of understanding the effect of the document, and (3) the insurance agents fraudulently misrepresented material facts in obtaining the "release."

In *Wood v. Young,* 127 Or 235, 271 P 734, the plaintiff, who had two claims against the defendant, one for personal injuries and the other for damage

to his automobile, called on the defendant's adjuster. He discussed with the adjuster only the claim for property damage and finally accepted $615 in satisfaction of the claim. He, however, endorsed a check tendered in payment of the claim, on the back of which was a release capable of a construction that it covered both claims. We upheld the trial court's decision which applied the release to the claim for automobile damage only. In that case we quoted with approval the following from 23 R.C.L. page 386:

"To be valid and binding, a release must be executed with full knowledge on the part of the releasor of what he is signing, and with an intention to discharge from liability."

We also noted in *Wood v. Young,* supra, that the disparity between the consideration offered for the release and the amount of the actual damages is entitled to weight in determining the issue. If the consideration is small in comparison to the amount of damages awarded by a verdict, that is a strong indication the plaintiff was not aware he was releasing his right to claim further damages. In the instant case it is claimed the plaintiff signed a release in consideration of $170 per month for the term of his actual disability not exceeding the period of five years; the amount of the damage, as determined by the jury, was $96,580.

In *Bissett v. Portland Ry. L. & P. Co.,* 72 Or 441, 143 P 991, the plaintiff, an eighteen-year-old girl, accepted $20 from defendant's claims agent a few minutes after she had been rescued from an overturned railway car and while she was too excited to understand the nature of the transaction. She signed a document which the agent had told her was a receipt for the $20. This writing was introduced by

defendant as a release valid on its face. We declined to uphold the efficacy of this writing as a release of liability. See also *Allister v. Knaupp*, 168 Or 630, 126 P2d 317; *Olston v. Oregon Water Power & Ry. Co.*, 52 Or 343, 96 P 1095, 97 P 538; *Woods v. Wikstrom*, 67 Or 581, 135 P 192; *Parker v. Norton*, 143 Or 165, 21 P2d 790.

In the case before us, the plaintiff testified he was told by the insurance agent that he (the agent) was obliged to fill out an accident report before his company could pay the doctor and hospital expenses and that he (the plaintiff) thereupon signed the paper which the defendants now claim is a release. It is incumbent upon us to accept the plaintiff's testimony as true; a determination as to its veracity is implicit in the jury's finding for the plaintiff. The evidence shows clearly a false representation by the insurance agent as to the character of the document plaintiff was asked to sign.

The representation just mentioned, which the plaintiff says misled him, was made to him the day following his release from the hospital and just 14 days after the accident which resulted in his injury. He sustained a severe depresed skull fracture and at the time he signed the document he was taking medications for headaches, nausea, and convulsions. He testified that his vision was impaired because of the injury and that he could not read the document. The latter was expressed in legalistic terms that are generally best understood by those who are familiar with the language of contracts and similar commercial papers. The paper did not express in terms of dollars and cents any specific sum which would become payable to the plaintiff. Unless one had in his possession the insurance policy, he could not determine the

amount of money which would become payable to him upon the signing of this paper. Nor would he know when or how the money would be paid, that is, in a lump sum or in installments. So far as we can determine from the record, the plaintiff was not permitted to see the policy and never saw it.

The policy, however, became an exhibit in this case and is before us. It provided:

"* * * the Company will pay the monthly indemnity periodically at the rate stated in the following Schedule for a period of twelve consecutive months if such disability continues; provided however, that the monthly indemnity payable shall not exceed two-thirds of the basic salary or wages of the Insured at the time such injuries are incurred; and provided such disability continues beyond twelve months and also prevents the Insured from engaging in any occupation for compensation or profit, the Company will continue such periodic monthly payments during such further disability but not exceeding forty-eight additional consecutive months for any one injury."

The alleged release which is quoted in a preceding paragraph says:

"* * * I hereby elect to accept an assignment to me * * * of the insurance benefits provided for in the accident insurance policy in full settlement of any claim for damages * * *."

Since the plaintiff, upon signing the Election to Receive Insurance Benefits, had not seen the insurance policy, he was not in a position to determine what, if any, benefits he would receive through an assignment to him of the defendants' claim against the insurance company. In fact, he could not have determined his rights had he looked at the insurance policy because the beneficiary of the policy was not the de-

fendants but The Portland Trust Bank of Portland. Whatever the bank's rights may have been were not disclosed at the trial, and since it was not a party to the transaction, the plaintiff may have had additional difficulties in working out his rights in the event that he relied upon the assignment.

But we will pass by all of those objections for a moment and see what the plaintiff would have received had he relied upon the Election to Receive Insurance Benefits. Assuming that the plaintiff would have continued to live for five years after his injury and also assuming that his disability would have continued and that the disability would have prevented him "from engaging in any occupation for compensation," he would have received a total of 60 times $170 or $10,200. That sum would have been paid to him in installments of $170 per month. The special damages which the jury awarded to the plaintiff were $15,580. Thus, the assignment would have brought the plaintiff $5,380 less than his special damages. The policy of insurance contains no provision whereby the Northern Life Insurance Company or any other concern would pay the plaintiff's doctors, hospital, or other medical expenses.

■ We have here a situation in which a seriously injured workman with only an eighth grade education was confronted by two trained insurance agents whose function was to adjust claims for personal injury. The plaintiff was asked to sign a document the character of which was misrepresented to him; and it is now claimed that by his signature he agreed to release a claim valued at $96,580 for a sum not to exceed $10,200—that is, for $170 per month during his disability and in no event for more than five years. The plaintiff was well aware that his injuries were

serious, and it is reasonable to assume he would not have released this valuable claim for the small consideration offered had he known what he was signing. We believe there was sufficient evidence from which the jury could have found the release was obtained by overreaching and deception.

After a careful consideration of all the assignments of error, we have found no merit. The judgment of the circuit court is, accordingly, affirmed.

Affirmed.

**ON REHEARING**

Dusenbery, Martin, Beatty & Parks, Portland, for the petition.

Before ROSSMAN, Presiding Justice, and PERRY, SLOAN, O'CONNELL, GOODWIN, DENECKE and LUSK, Justices.

## PER CURIAM.

The defendants petitioned for rehearing upon the ground, among others, that our original decision was in error because it condoned the trial courts failing to strike an allegation charging generally a violation of the Employers' Liability Act and not specifying the nature of the charged violation; and in submitting such general charge of fault to the jury.

So that there is no misunderstanding concerning what is always a puzzling pleading problem, we restate that in pleading a violation of the Employers' Liability Act it is necessary to plead the specific device, care, or precaution that plaintiff claims should have been used. The plaintiff's complaint did not so plead and was, therefore, faulty.

■ The trial court's error in not treating this as a faulty pleading, however, was not prejudicial because of the nature of the evidence and the instructions to the jury. The plaintiff introduced evidence of only one specie of fault; i.e., a failure to provide guards. This was the fault specified in plaintiff's complaint as a charge of common law negligence and violation of the Basic Safety Code. Therefore, the defendants were apprised by the complaint of the nature of the fault charged although they were not thereby informed of the full legal significance of such charge. The court instructed the jury that in considering whether the defendants had failed to use every device, care, and precaution they were limited to that "which has been proven by the plaintiff to be a care, device or precaution which could have been used, * * *." A guard is the only device which plaintiff attempted to prove could have been used.

■ The petitioners also believe we committed grievous error in concluding that the trial court's ruling in striking the Safety Code requirement of hard hats from defendant's answer was not reversible error. Petitioners point out that a vice principal is required as a matter of law to comply with applicable provisions of the Safety Code. We reached the conclusion that the trial court's error was not reversible by the reasoning that the jury, in returning a verdict for the plaintiff, must, therefore, necessarily have found that the plaintiff was not a vice principal; therefore, whether or not vice principals were required by the Safety Code to wear hard hats is immaterial.

ORS 654.315 requires of vice principals that they "shall see that the requirements of ORS 654.305 to 654.335 are complied with;" i.e., a vice principal shall see that every device, care and precaution is used.

The jury must necessarily have found that the crusher should have been equipped with a guard. If plaintiff had been a vice principal this would have been a responsibility of his and his failure to fulfill this responsibility would have barred his right of recovery. Thus, a verdict for the plaintiff is a finding that plaintiff was not a vice principal.

Petition denied.